[No. 1396.]

H. H. BECK, RESPONDENT, v. WILLIAM THOMPSON, APPELLANT.

(Syllabus by BIGELOW, J.)

1—STATEMENT ON APPEAL—PAPERS NOT PART OF RECORD.—Papers not made a part of the statement on motion for new trial, nor otherwise identified as provided by the statute, cannot be considered upon the appeal.

2—STATEMENT—MOTION TO STRIKE OUT MUST BE MADE IN COURT BELOW.—A motion to strike out a statement on motion for new trial, upon the ground that no notice of intention to move for a new trial was given, will be denied where it does not appear that any objection upon that ground was made in the district court.

3—FINDINGS—NOT IN STATEMENT STRICKEN OUT.—Findings not included in the statement on motion for new trial will, upon motion, be stricken from the record on appeal. The fact that they are identified by the judge of the district court as having been used upon the hearing of the motion, does not alter this rule.

4—ASSIGNMENT OF ERROR—SUFFICIENCY OF.—Under the amendment to the practice act (Stats. 1893, 88), an assignment of error that the verdict of the jury, or the decision, or judgment, or decree of the court, is not supported by the evidence, requires this court to review the evidence to ascertain whether it is sufficient, without regard to whether there are findings upon the points claimed to be so unsupported.

5—SURVIVING PARTNER—BUSINESS CARRIED ON WITHOUT AUTHORITY BY.—Where, after the death of a partner, the business is carried on by the survivors, without authority so to do, his representatives have the right to elect to receive a share of the profits of the business after his death, or the deceased's share of the property of the partnership at the time of his death, with interest thereon.

6—WHAT CONSTITUTES ELECTION.—In 1881 a partnership was formed in which Beck owned one-half and Lake and Bole one-fourth each. In 1884 Lake died intestate. Upon distribution of the estate, in 1888, the defendant, Thompson, succeeded to the estate's interest in the business, which, subsequent to the intestate's death, had been carried on by the surviving partners without authority so to do. The evidence shows that the understanding of all the parties was that by this distribution, Thompson succeeded to a partner's interest in the profits of the business as so carried on, and to the same interest in the stock on hand. Thereafter the business was conducted by these three as partners for some months, when Thompson, by mutual consent, bought Bole's interest in the stock on hand, and the latter was paid his share of the profits of the business, upon the theory that each was entitled

to a partner's interest from the beginning. Bole retired from the firm, and Beck and Thompson continued the business as partners, each owning one-half. *Held*, that thereby Thompson had exercised the option which the law gave him, and had elected to take a partner's interest in the profits of the business carried on by the surviving partners.

7—UNAUTHORIZED IMPROVEMENTS MADE BY SURVIVING PARTNER, IF RATIFIED, CANNOT BE REPUDIATED.—During the time the business had been carried on by the surviving partners, Beck made unauthorized improvements upon a flouring mill used in the business, but belonging to himself and the deceased jointly. *Held*, that, under the circumstances stated, the defendant had ratified the making of these improvements, and could not afterward repudiate the expense of making them.

8—SURVIVING PARTNER—COMPENSATION FOR SERVICES.—Prior to Lake's death, by agreement of the partners, Beck was paid a salary for his services to the firm. He has been allowed this salary during the continuance of the business since, but in addition he also claims compensation for caring for the mill used in the business, but belonging to himself and the deceased jointly. He and the deceased also owned other real property, which was not used in the partnership business, for which the plaintiff cared, and upon which they made a profit. *Held*, that for the former services he is not entitled to additional compensation, but is for the latter.

9—INTEREST UPON UNPAID CAPITAL.—Upon the formation of the partnership the partners agreed to each furnish certain capital. Bole furnished his share, but Beck and Lake failed to furnish the amount agreed upon by them. In view of this, they then agreed to pay interest upon the amount they were short. *Held*, that under the circumstances this agreement should be carried out after Lake's death, but each should only pay upon the amount of his individual shortage.

10—AMENDMENTS TO PLEADINGS, NOT CHANGING RIGHTS OF PARTIES, ALLOWABLE.—It is not error to allow amendments to a pleading which do not change the rights of the parties.

11—ACTION BETWEEN PARTNERS—WHEN ONE NOT A NECESSARY PARTY.—An action may be maintained by one of three partners in a dissolved partnership against one of the other partners for a settlement of the partnership accounts, without making the other partner a party to the action, where it appears that the third partner is a non-resident of the state, has disposed of all interest in the partnership property to his co-partners, and that his rights will not be prejudiced by the present litigation.

APPEAL from the District Court, Washoe county; *Hon. A. E. Cheney*, District Judge.

The facts, so far as they are necessary to an understanding of the points decided, are as follows: In 1879 the plaintiff and M. C. Lake formed a partnership for the purpose of conducting a flouring mill business at the town of Reno, under

the firm name of Lake & Beck, in which each was to be equally interested. They erected a mill and carried on the business until 1881, when a new partnership was formed for the same purpose, consisting of Lake, Beck and David Bole, under the firm name of H. H. Beck & Co., in which Lake was to own one-fourth, Beck one-half, and Bole one-fourth. Lake sold to Bole one-fourth interest in the stock on hand of the old firm, and thereafter the business was to be conducted by the new firm, they paying to the owners of the mill, Lake and Beck, a rental of $400 per month for the use of the mill, the owners to pay for all necessary repairs and improvements upon the property.

In 1884 Lake died. Shortly after his death an inventory of the stock on hand was made, and the profits of the business were estimated and credited, but no money was paid, nor was there any change in the business, which was continued as before by Beck and Bole, under the firm name of H. H. Beck & Co. An administrator of Lake's estate was appointed. In 1888 the estate was wound up, and distribution and partition made of the property among the heirs and their grantees, in which all the interest of the estate in the mill property and business was set over to Thompson, defendant herein. Without any formal agreement to that effect, so far as the evidence shows, the business was still continued the same as before until the spring of 1889, when Bole retired. He was credited with his share of the value of the stock then on hand, and for that, and for his proportion of the profits, he was paid by Beck from moneys which had accumulated in the business. Shortly after this the mill burned down, but was rebuilt by Beck and Thompson, restocked by them, and run for a short time, when it was all sold to the Riverside Mill Company. During the administration of Lake's estate, Beck paid to the administrator $17,000, and, after Thompson succeeded to the property, paid various sums to him. He now claims that Thompson has received more than his proportion of the moneys arising from the property and business, and he brings this action for an accounting and settlement of the whole business from the beginning, and for a judgment against Thompson for the balance claimed to be due him. The court rendered judg-

ment for the plaintiff for the sum of $3,770 54, with interest, and the defendant appeals.

*William Webster*, Attorney, and *Byron Waters*, Counsel, for Appellant:

We believe that the court has power to review the evidence under Stats. 1893, p. 89.

There are a few facts in the case that should not be lost sight of in arriving at a conclusion upon the rights of the parties in interest. One of these facts is, the ascertained value of the personal property of H. H. Beck & Co. at the time M. C. Lake died. The amount or value of the property on hand at any time is the basis for a settlement of such matters as thereafter arose upon the continued business of H. H. Beck & Co. Respecting the business of Lake & Beck, the partnership seems to have had the misfortune of being always in debt; whether this relation is a matter of fact or of fiction remains to be determined upon investigation and proper application of the facts under the law.

The respondent prays an accounting by Mr. Thompson, who never has been in any position that would place him within the jurisdiction of a court of equity upon a bill made for an accounting at the suit of Mr. Beck. At no time has Mr. Thompson sustained a relation of trust in favor of Mr. Beck or Mr. Bole respecting the matters involved. H. H. Beck and D. Bole conducted the business and received all moneys, and are the parties, as the case stands, from whom an accounting may be required.

When the business is continued after the death of one of the partners, a new partnership is formed. The liabilities of the new firm are distinct from the debts of the old partnership. (Woerner's Am. Law of Administration, sec. 125, p. 287, 288, citing in note 1, p. 288; Storey on Partnership, sec. 384, and authorities cited; Collier on Part., secs. 24 and 613 and authorities cited.)

The liability to account after dissolution rests upon the exposure of the stock of the deceased partner, to the risks of the new business. (Woerner's Am. L. of Ad., sec. 124, p. 285, and authorities cited.)

Should the surviving partner continue the trade or business with the co-partnership stock it is at his own risk, and

he will be held to account for profits or for interest, at the option of those who succeed to the deceased partner's share of the stock, and is liable for all losses. (Collier on Part., sec. 343, p. 535, vol. 1; Woerner's Am. L. of Ad., sec. 124, p. 284, citing Storey on Part., sec. 343.)

There are slight exceptions to some of these rules above stated. If profits are claimed, bad debts must be allowed or deducted, and if the business continue beneficial to the parties, the surviving partner should receive a reasonable compensation for conducting the business. (Woerner's Am. L. of Ad., sec. 124, p. 384, citing *Greggs* v. *Clark*, 23 Cal. 427, upon the question of compensation.)

The rule giving compensation will not apply to Lake & Beck, if Mr. Beck is correct about their partnership being always in debt. If the business is carried on with the consent of the executor or administrator, the surviving partner is liable for profits only. (Woerner's Am. L. of Ad., sec. 124, *supra*.)

Mr. Bole not being a party, I will use the name of Beck only. It will not be claimed that Mr. Beck continued the business with the consent of the administrator, and if not so claimed Mr. Beck is placed in a position that requires him to account for losses together with profits. The law is, that the title devolves upon the surviving partners, but in equity they are, as regards the interest of the deceased, deemed to be trustees thereof for the persons entitled to the estate, and are compelled to account with them. (Lindley Part., vol. 1, 462.)

It is a rule in equity, when persons who are necessary parties to the bill are not in the jurisdiction of the court, that the court will proceed, as far as it can proceed, with such parties as there are before it, and will make a decree, if it can do so without injury. The general rule is, that all the partners must be made parties, but there are exceptions to the rule. One exception is, when one or more of the partners reside in a foreign country; then, if possible, the court will proceed without such partners, but no injustice should be done. (Storey Eq. Plead., sec. 78, 6th ed.)

Should Bole become an active party to the execution of a decree made in the case, he would then be a necessary party, and no decree could be made without him. (Storey Eq. Plead., sec. 81.)

If a bill is made by one partner against several other co-partners, one of whom is out of the jurisdiction of the court, praying for an accounting, such absent partner should be made a party, as his interest in the co-partnership is as broad as the co-partnership, and pervades the whole of the co-partnership business, and, therefore, is an indispensable party. (Storey Eq. Plead., sec. 82, *supra*.)

Mr. Thompson was not a member of either of the original partnerships but succeeded to the interest of M. C. Lake, the deceased partner, and is entitled to all the property rights of the deceased partner. The accounting should follow and does follow the manner of the receipt of the property by the partners that receive it. The profits are an outflow from a joint receipt and are permeated with a joint energy, and no severance can be made without violence till an accounting is made. (Storey Eq. Plead., sec. 219; Barbour on Parties, p. 467.)

When the breach includes a *fraudulent alienation of the trust estate*, every trustee is separately liable. (Hill on Trustees, star p. 521; Perry on Trusts, vol. 1, sec. 879, citing *Gilchrest* v. *Stevenson*, 9 Barb.; Snell's Equity, p. 435.)

In all cases a party beneficially interested, coming into equity, must do equity and join all parties who have interfered with the possession. He cannot proceed against one alone as at law in trespass and make one of the trespassers bear the burden of the wrongful intrusion. (Perry on Trusts, vol. 1, p. 316, citing *Willie* v. *Ellice*, 6 Hare, 515; *Phene* v. *Gilloon*, 5 Hare, 5.)

Surviving partners are trustees in equity, and will be held liable as such for the conversion to their own use of the partnership funds or the property in their hands. (Woerner's Am. Ad., sec. 124, vol. 1, citing *Renfrow* v. *Pierce*, 68 Ill. 125; *Castley* v. *Towles*, 46 Ala. 660; Hill on Trustees, star p. 379.)

A party who seeks to charge a trustee with the consequence of a breach of trust is bound so to state his case upon the bill that the consequences alleged, if proved, must necessarily constitute a breach of trust. (Hill on Trustees, star p. 535.)

The employment of trust funds in trade or any speculative undertaking, without any express authority, will *a fortiori* be treated as a breach of trust, and whatever may be the appar-

ent advantages of such a course, and however well inten-
tioned the conduct of the trustee, there is no question but
that the court will visit upon him any loss resulting from
such a step, while he will have to account for any profit thus
made, and the same rule applies, although the trust property
be merely continued, in the trade or business of the testator,
and it is immaterial that the trustees were the partners of
the testators.    (Hill on Trustees, star p. 579, p. 559; Lindley
on Part., star p. 892.)

A trustee or executor is bound to keep clear, distinct and
accurate accounts.    If he does not all presumptions are
against him, and all obscurities and doubts are to be taken
adversely to him; and even if he enters the accounts of the
trust in the books of the firm of which he is a partner, the
books must be produced.    (Perry on Trusts, sec. 821, vol. 2.)

Those standing in a fiduciary relation must account.
Partners stand in a fiduciary relation to each other and must
account.    (Perry on Trusts, vol. 1, sec. 430.)

Persons who sustain a fiduciary relation to an estate must
account, and the accounting must be to those who succeed to
the estate.    (Perry on Trusts, vol. 1, secs. 430, 431.)

A person may become a trustee by construction, by inter-
meddling with and assuming the management of property
without authority.    Such persons are trustees *de son tort*, and
they cannot demur to a bill charging them with neglect of
duty.    (Perry on Trusts, vol. 1, p. 314, 315, sec. 245, citing
in note 1, *Le Fort* v. *Delofield*, 3 Edward, 31; *McCoy* v. *Scott*,
2 Rawle, 222; *Schwartez's Estate*, 14 Pa. St. 42; *Peo.* v. *Haugh-
tawling*, 7 Cal. 384.)

During the possession and management by such con-
structive trustees, they are subject to the same rules and
remedies as other trustees, and they cannot avoid their lia-
bility by showing that they were not, in fact, trustees.
(Perry on Trusts, vol. 1, p. 315, citing note 6; *Rockham* v.
*Biddall*, 1 Mac. & G. 607; 2 Hall & T. 44; 16 Sim. 297;
*Hafe* v. *Liddell*, 21 Beav. 183.)

If a trustee or other fiduciary person wrongfully convert
the trust fund into a different species of property, taking to
himself the title, he is still a constructive trustees, etc.
(Pomeroy's Eq. Pl. Jur., sec. 1051, vol. 2.)

An administrator lawfully in charge of real estate of a

decedent, should exercise the same diligence and prudence in its preservation and protection as if it were personal property in his hands, and he should be allowed credits for disbursements made prudently and in good faith upon necessary repairs. (Woerner's Am. Ad., p. 767, 1151.)

Real estate belonging to a partnership is treated in equity as personal funds. (Woerner's Am. Ad., p. 289.)

A trustee cannot convert an infant's personality into real estate. If such a conversion is made the wards on coming of age may elect to receive their personal property, and the trustee or guardian must account and pay it over to them, or they may acquiesce in the purchase when of age. (Perry on Trusts, sec. 606; Pomeroy's Eq. Jurisp., sec. 1304.)

*Clarke & Jones*, Attorneys, and *W. I. Knox*, Counsel, for Respondent:

A written agreement for interest is not required, except when the interest claimed is in excess of the rate fixed by the statute law. (Gen. Laws, secs. 4903, 4904; 1 Nev. 533, 537; 2 Nev. 199, 204, 205; *Smith* v. *Johnson*, 23 Cal. 63.)

The cases cited by appellants do not support their position.

In *Desha and Shepherd* v. *Smith*, it is decided: That a demand of two or three partners that a third shall pay interest on the entire excess of capital furnished by said two partners cannot be supported in the absence of an agreement to that effect, but finding such an agreement the court enforced it. (20 Ala. 747, 749, 750.)

In *Topping* v. *Paddock*, it is decided that when two members of a firm of three agree to furnish the capital against the labor of the third, the two so agreeing and furnishing are not entitled to have interest on such capital. (92 Ill. 92.)

The sum upon which interest is charged was, in fact, loaned by H. H. Beck & Co. to Lake and Beck for building purposes, and for sums so loaned H. H. Beck & Co. were entitled to charge interest at the rate of ten per cent per annum. (Gen. Laws, sec. 4903, 4904.)

Interest is recoverable on money paid the Lake estate and Thompson in excess of amounts due.

The money paid to the Lake estate and Thompson was not, as in Lindley on Part., money of the firm, in the hands of the estate and Thompson, and retained by them, but was

Opinion of the Court—Bigelow, J.

money paid to them by Beck which he believed they were
entitled to receive upon the theory that the partnership con-
tinued, and the estate had elected to take the profits of the
business. Now that this theory is rejected the sums are
money paid by Beck for the use and benefit of the estate and
Thompson, for which Beck is entitled to have interest. But
if Beck is not entitled to interest, neither is the estate of
Thompson. The court will not apply one rule to Beck and
a different rule to the Lake estate and Thompson. More-
over, when the payments were made, they were in the nature
of advances, and as a favor to the estate and Thompson.

BIGELOW, J. (after stating the facts):

The respondent moves to strike out the statement on
motion for new trial, upon the ground that no notice of
intention to move for a new trial was given. The record does
not contain any such notice, and the only reference thereto
is in the opening of the statement on the motion, where it is
said that the appellant "makes his motion for a new trial on
the grounds mentioned in his notice of motion made and
filed." He now, however, under a suggestion of diminution
of the record, offers what purports to be a copy of such notice,
containing an admission by respondent's attorneys of regular
and sufficient service, certified by the clerk of the district
court to be a true copy of the notice on file in his office, but
it was not made a part of the statement, nor is it identified
as having been used or referred to on the hearing of the
motion for new trial, if, indeed, such identification would be
sufficient to entitle it to consideration here. Under these cir-
cumstances, it is not a part of the record on appeal, and con-
sequently cannot be considered by us. (*Greeley* v. *Holland*,
14 Nev. 320; *Mining Co.* v. *Barstow*, 5 Nev. 252; *Caldwell* v.
*Greely*, Id. 258.)

We are, however, of the opinion that, if no sufficient notice
of the motion had been given, the objection should have been
made in the court below, when the missing papers might
have been supplied and made part of the statement. There
does not seem to be any statutory provision for making the
notice of motion for new trial a part of the record on appeal.
It does not direct that it shall be included in the statement
on the motion, nor is it mentioned among the papers which

may be identified by the judge or clerk as having been used
or referred to upon the hearing of the motion. But, notwith-
standing, had it been copied into the statement we would
perhaps, under the decisions, have held that it was properly
before us, upon the principle that the statement is to contain
everything necessary for the presentation of the grounds for
new trial, and for which no other method of bringing before
the court has been provided (*Mining Co.* v. *Barstow*, 5 Nev.
252), but, in the absence of timely objection in the court
below, it does not seem that it should necessarily have been
placed there. The question does not appear to have been
heretofore raised in this state, but, under the quite similar
statute of California, it has been often before the courts of
that state, and they have, after ruling that the presumption
was, under some circumstances, that the notice had been
properly given, and that, if no objection was made in the
lower court, the point was waived, finally come to the con-
clusion that, as no provision has been made for bringing up
the notice, it must have been the intention of the legislature
that it was simply for use in the lower court, and that, if any
objection to it existed, it must be first made there, and then,
by a proper record, brought up on the appeal.

*Pico* v. *Cohn*, 78 Cal. 384. The court there said (p. 386):
" We do not put this upon the ground of waiver by the
opposite party, as is done in some of the earlier cases, but
upon the sole ground that we must look alone to the state-
ment or bill of exceptions for the questions to be determined,
in the absence of any showing by the respondent that no
notice, or an insufficient one, was given. Undoubtedly, the
notice of intention is necessary, but if it has not been given,
or has been given too late, that must be shown by the
respondent as against the settlement of the statement or bill
of exceptions, or at the time of and in opposition to the
motion for new trial; and, if the court below rules against
him, he must cause the facts necessary to present the ques-
tion to be then included in the statement or proper bill of
exceptions, so that this court can determine whether a proper
notice has been given or not."

In the uncertainty in which the matter has been left by
the practice act, this seems the most reasonable view that
can be taken of what the legislature must have intended,

and constitutes a clear and easily understood rule that will compel parties to make their objections at a time when, if groundless, it can be readily shown, instead of waiting until under our practice it is impossible to supply the missing records. The respondent also moves to strike the findings from the transcript, upon the ground that they are not included in the statement, and we are of the opinion that this part of the motion must be sustained. It has been so often held that the findings, in order to be considered on an appeal, must be included in the statement, that, if any rule of practice can be considered settled, this must be. The appellant, however, contends that, as the findings were indorsed by the judge as having been referred to upon the hearing of the motion for new trial, this should be sufficient to make them a part of the record here; but this very point was presented to the court in *Boyd* v. *Anderson*, 18 Nev. 348, and held adversely to him, and must now be considered as settled.

In view, however, of the frequency with which parties fail to comply with the rules concerning the making of statements on motion for new trial, and the records on appeal therefrom, we deem it proper to suggest that it would be well for the legislature to endeavor to make them more liberal. This court, the same as all other courts, was created for the purpose of reviewing the merits of the controversies of men, and of determining them upon the broad principles of justice, and not upon technicalities, and it is always a matter of sincere regret to be compelled to do the latter. In every possible way this should be avoided. The rules concerning these matters could be made much more liberal than they are, and it should be provided that no failure to comply with them, which still left it possible to understand the points made, and did not prejudice the substantial rights of the parties, should prevent the consideration of the case upon its merits. Where it is claimed that the statement is insufficient upon grounds that might be avoided by amendment, parties should be required to make their objections in the district court in such way that they can be preserved in the record, or to waive them. It is probably the law now that if a party submits a motion for new trial upon its merits, without objecting to the sufficiency of the statement to raise the errors assigned, he

thereby waives the objection, but the difficulty is that the
fact that he has done so is not made to affirmatively appear,
and, in the absence of such showing, a waiver is not to be
presumed. (*White* v. *White*, 6 Nev. 20; Haynes, New Trials
& App., sec. 145.)

The power of amendment of statements and bills of excep-
tion also exists, and, to the end that the merits of the action
may always be presented for decision, should be as liberally
allowed, upon such terms as may be just to the other party,
as it is now concerning pleadings and other proceedings, and
by this means the effects of very many mistakes might be
avoided. But no offer to amend was made here, and we feel
compelled by former decisions to sustain this part of the
motion to strike out. While quite an important change in
the practice has been wrought by the amendment to section
197 of the practice act (Stats. 1893, p. 88) we are of the
opinion that it cuts no figure upon this motion.

The defendant assigns as error, and quite strenuously
argues, that the court erred in holding that the defendant, as
distributee of the interest in the partnership of the deceased
partner, M. C. Lake, had elected to take the part of the
partnership property belonging to the deceased at the time of
his death, with interest thereon, instead of an interest in the
profits of the business as continued by the surviving part-
ners. A complete answer to this contention is that, in the
absence of the findings, we cannot know that it was so held.
The court found a certain sum to be due from the defendant
to the plaintiff, but, without the findings, there is nothing to
show that the balance was not arrived at strictly in accord-
ance with what the appellant contends to have been the
correct method.

Most of the errors relied upon arise upon the findings, and
require no further notice. There are some assigned, however,
that seem to call for such examination of the evidence as is
possible in such a complicated matter, and without the
assistance of the original accounts or of findings. By the
amendment already spoken of (Stats. 1893, p. 88), it is,
among other things, provided: "When the notice designates
as the ground upon which the motion will be made, the
insufficiency of the evidence to justify the verdict or other
decision, it shall be a sufficient assignment of error to specify

that the verdict of the jury, or the decision, or judgment, or decree of the court, is not supported by the evidence, or is contrary to the evidence. In such case, where it appears that the evidence, taken altogether, does not support the verdict, or decision, or judgment, or decree of the court, a new trial shall be granted, or, upon appeal, the case shall be reversed without regard to whether there are express findings upon all the issues." * * * *

As already remarked, this statute has worked an important and quite radical change, and in a proper case, without regard to whether there are or are not findings, seems to impose upon this court the duty of reviewing the evidence, and determining whether the final result is supported by it. This statute was undoubtedly designed to cut through many of the technicalities that have so often prevented cases from being considered upon their merits, and should be construed in the same broad spirit in which it was enacted, but at the same time with such conservatism as will not result in the reversal of cases where substantial justice has been done. Grounds for reversal not raised in the trial court should not be noticed upon the appeal; where there is a substantial conflict in the testimony, the appellate court should undoubtedly not substitute its judgment for the judgment of the trial court, and should only interfere where, upon all the evidence, it is clear that a wrong conclusion has been reached. Under this statute there are several assignments that raise the question as to the sufficiency of the evidence, and under them we proceed to its consideration. The general correctness of the accounts of the business as kept by the plaintiff and by David Bole appears to be admitted; that is, it is admitted that they constitute the basis upon which the settlement must be made, and it is only some particular items therein that are claimed to be wrong. As the accounts are presented to us, it will not be necessary, nor even possible, for us to do more than to consider these particular matters. We must accept these accounts as correct, and also accept the statements made from them by the experts as correct, unless we can clearly see that they are not. Several such statements are contained in the evidence, made by different bookkeepers, all of which, although differing to some extent, find a greater balance due from the defendant than that found by the learned judge of

the trial court. These statements were made upon the theory
that the defendant was entitled to the deceased's interest in
the business of H. H. Beck & Co. at the time of his death, and
to a partner's share of the profits of the business as carried on
by the surviving partners up to the time of the distribution
of the estate, and after that, by Beck, Bole, and the defend-
ant. We are of the opinion that this theory is correct, and
constitutes the true basis upon which the accounts should be
made up.

Up to the time this action was instituted, it is quite clear
that this was the understanding of all parties. This is first
shown in Beck's report to the administrator, made in Feb-
ruary, 1885. In that the accounts are carried right along, in
accordance with the partnership agreement, after Lake's
death, the same as before, and Beck strongly advises that the
business should be permitted to so continue, stating that, if
it were, he was confident of his ability to pay off the indebt-
edness then existing against Lake and Beck, amounting to
over $23,000. To this report no objection .was made, nor
was any objection ever made by any one to the continuance
of the business. When the distribution was made there can
be no question that all parties understood that Thompson
succeeded to the estate's interest, and thereby obtained a·
one-fourth interest in the firm of H. H. Beck & Co., until
the purchase of Bole's interest, and, after that, the owner, as
partner with Beck, of one-half. There may have been no
express agreement to that effect, but they all understood that
he thereby became a partner, and the business was continued
upon that theory; this is sufficient to make him such. That
this was their understanding is shown by all the circum-
stances. The complaint alleges that he became a partner.
Beck so testified, and, although Thompson seems to attempt
to deny it in his answer, he does not in his testimony, and,
in fact, shows that he understood that such was the case.
Upon the theory that the estate had succeeded Lake, and
that Thompson had succeeded the estate, in the firm, and
was consequently entitled to a one-fourth share from the
beginning, a division of the profits of the business was made
with Bole, and he was paid his share of them, and for his
share of the stock on hand. That Thompson became a
partner seems too clear for argument, and, it may be added,

if such were not the case, it is difficult to see upon what principle a court of equity could take jurisdiction of the case, for, without that, Beck's only remedy, if any, would be an action at law to recover back money paid by mistake. But, with it, the jurisdiction is clear, as well as the principles upon which the case should be decided. We then find an unsettled partnership between the plaintiff and defendant, to the proper adjustment of which it becomes necessary to state the accounts from the beginning, and in which, if it is found that the defendant has received more than his share of the proceeds, a decree against him for such share is proper. The time for the representative to elect whether he would take a one-fourth share in the profits of the business as continued after Lake's death, or the deceased's share at the time of his death, with interest thereon, was when he became the legal owner of that interest; that is, when the distribution was made. When he became a member of the partnership upon the theory that the estate's interest therein still continued, and as the successor of that interest, he chose the former alternative.

The respondent's counsel contends that the defendant in his answer elected to take the deceased's share, with interest thereon from the time of his death, but, aside from the fact that the election had been made long before this, a careful examination of the answer does not lead us to the same conclusion. We find nothing therein supporting such a view, but on the other hand, while needlessly attempting to deny liability for debts incurred in the business, of which none existed, the contention all the way through seems to us to be that the profits of the business, after Lake's death, had been much larger than the plaintiff admitted, and that in these profits the defendant was entitled to a partner's share.

Upon the theory, then, that the accounts should be stated the same as though the partnership had continued from the beginning, we proceed to determine whether any errors were made in the statements that would reduce the balance against the defendant below that fixed by the court. While not, perhaps, very material, it seems to us that, after the formation of the firm of H. H. Beck & Co., the old firm of Lake & Beck ceased to exist, and, consequently, we have but the affairs of one partnership to settle. After that, Lake &

Beck were simply tenants in common of the mill property, for the use of which they were to receive a certain compensation over and above the profits of the business, the same as Beck and Bole were to receive extra compensation for their services, and the firm name of Lake & Beck was simply used by the book-keepers of the former firm for convenience in keeping the accounts with the mill. But, however, this may be, if there were two firms, their affairs were so interwoven that it would not be possible to settle one without also settling the other. They were virtually but one, and the same principles should be applied to the settlement of both.

It is admitted that, from the formation of the partnership of H. H. Beck & Co. to the sale of the mill, the firm earned a profit of $71,889 68, of which defendant received one-fourth, but the $400 monthly rent paid to the mill owners did not pay the expenses of keeping the property in repair, making a change in the machinery from the burr system to the roller system of grinding, and certain charges for interest, to be hereafter noticed. Appellant contends that, as surviving partner, Beck had no authority to improve the property by making the change in the system of grinding, and should receive no credit for the expense of so doing. So far as the want of authority to make the improvements is concerned, the appellant is doubtless correct, but we do not consider this, under the circumstances existing here, as leading to the conclusion that he should not receive credit for the money so expended. It is not claimed that the change did not increase the earning capacity of the mill, nor that it was not made in good faith. In fact, as we understand the evidence, it is shown that it did increase it, and is doubtless one of the reasons for the profits of H. H. Beck & Co. being as large as they were. C. T. Bender's testimony shows that Thompson was familiar with the manner in which the business was being carried on. Beck's report to the administrator, already mentioned, stated that he was then engaged in making this change; that upon the mill property the operation showed a loss to the owners, and that for profits they must look to the milling business of H. H. Beck & Co. Under these circumstances, there is no reason for believing that Thompson did not know of the extensive change mentioned, and knew, necessarily, that money had been expended in making it,

and that such expenditure, while deducting from the profits of the mill, increased the profits of the milling business. When, therefore, he elected to take a partner's share in the profits of the business, he elected to ratify the manner in which they had been made. He could not take the profits without bearing the losses, and this was one of them. In addition, he accepted the mill as remodeled, accepted the profits of a partner in running it for some months, and, when it was burned, received the benefit of the insurance obtained upon the machinery of the new process; and all this without objection of any kind until the disagreement arose concerning the settlement. In view of all this, there is no question but that Beck should receive credit for the cost of making the change. Included in the testimony we have the statements of Rule and Roff, who had examined the books of the firms as experts, and who substantially agreed in their conclusions. They found that, as shown by the books, Beck was entitled to a credit of $8,732 34, and that Thompson was indebted $5,763 50. In the absence of the findings, we adopt these statements as a basis for examining the case. Included in Beck's credits therein we find items amounting to $4,162 50, for services rendered to Lake and Beck. Much of this charge does not appear to us to be correct. The mill was rented to H. H. Beck & Co., and was managed and controlled by them. They saw to all necessary repairs and changes, and, when it was burned, they rebuilt it; of course, at the expense of the owners. For his services to the firm, as general manager, Beck was paid a salary of $100 per month. No charge for anything more than this was made during Lake's lifetime, and we are of the opinion that the intention was that this should be in full for all services in this connection. The "Arcadome" transaction stands, perhaps, upon different footing, and as to that he may be entitled to extra compensation, but much less than the sum mentioned above. We will leave the amount to be fixed by the trial court upon a rehearing.

Upon the formation of the partnership of H. H. Beck & Co., it was agreed that Beck should furnish, as capital, $12,000; Lake, $6,000; and Bole, $6,000. Bole furnished his share, but Lake and Beck failed in a part of theirs. Bole objected to this, and it was finally agreed between them that,

upon whatever amount their capital might be short, they should be charged interest. This was done, but, instead of charging each partner for the amount of his own deficiency, it was, for the convenience of the bookkeepers, all charged to Lake and Beck jointly; that is, these charges for interest were carried into the mill accounts, and charged in the same manner as money expended upon the mill.

The defendant first contends that no interest whatever should be allowed, but we do not agree with this view. The arrangement amounts to·the same thing as paying Bole interest upon the excess of capital invested by him, and, as it was done by agreement of the partners, we can see no objection to it. Nor are we able to find that any more was charged than was properly due. Lake's capital was not, however, as much short of what it should have been as was Beck's, so, of course, he should not have paid as much interest, but, owing to the system of bookkeeping adopted, Lake, or the Lake interest, seems to have paid it all. As we understand the figures, the amount of interest so charged to Lake and Beck amounted to about $16,000, of which each paid one-half. But, as this went to swell the profits of H. H. Beck & Co., of which Beck was entitled to one-half, he received his entire payments back in dividends, but Lake, owning one-fourth interest in the firm, only received $4,000 back as profits; the other $4,000 going to Bole, which was really all the interest paid. Of the amount so paid, each should be charged in the proportion that his capital was short. Mr. Beck should be charged with whatever his proportion was, and it having been paid by Thompson, or the interest he represents, he should receive credit for it. This was not done in the statement. In this connection it is proper to add that the statement also shows that quite a large amount of uncollected accounts have been carried into it, another matter for consideration and correction upon a retrial.

Without going further into details, enough has been said to show that in the view we take of the evidence, as we find it reported here, the decree against the defendant should .be considerably less than it is, and in this respect we think the decision is not supported by the evidence.

We cannot close this part of the case without remarking upon the manner in which the statement and transcript have

been prepared. There is scarcely a page that does not show serious and inexcusable mistakes upon the part of the reporter, the copyist, or the printer, that have added greatly to the labor of considering the case. It was the duty of the attorneys to see that all these were corrected, and, as a proper penalty for not having done so, we have determined to allow no costs upon the appeal.

The appellant assigns as errors of law the allowance of certain amendments to the complaint, and the overruling of his objection to proceeding until Bole was made a party to the action. We do not find that the amendments in any way changed the legal aspects of the case, and consequently they were harmless to the appellant. While Bole would be a proper party to the action, it is shown that he is a non-resident of the state, and that he has disposed of all interest in the partnership business to either the plaintiff or defendant. Under these circumstances, he could only be brought in as a party by publication of summons, and, as he has no interest in the property involved in the litigation, under the principles established in the well-known case of *Pennoyer* v. *Neff*, 95 U. S. 714, any judgment so obtained would be a nullity. Such being the case, our courts must either proceed without him or they must necessarily refuse to settle the controversy between our own citizens. Bole's rights will be in no manner prejudiced by this litigation, and, that being so, we think the action should be allowed to proceed without him. (*Towle* v. *Pierce*, 12 Metc. (Mass.) 329.) Any claim that appellant makes against him will be subject to adjustment in an action in the proper form. The decree is reversed, and cause remanded for a new trial, but without costs to either party.