[No. 1428.]

H. H. BECK, PLAINTIFF AND RESPONDENT, *v.* WILLIAM THOMPSON, DEFENDANT AND APPELLANT.

1—PARTNERSHIP—MONEY ADVANCED BY ONE MEMBER TO, REPAID BY FIRM, DEBT CANCELED, NO CLAIM THEREAFTER AGAINST FIRM OR CO-PARTNER CONCERNING TRANSACTION.—When one of two partners advance a sum of money to the partnership and the same is paid back to him out of firm funds, the debt is canceled and he has no further claim against the partnership or against his co-partner with respect to the matter.

2—NAME—SERVICES RENDERED BY ONE MEMBER OF TO FIRM, COMPENSATION FOR.—Decision on former appeal (*Beck* v. *Thompson, ante,* page 109) sustained and judgment modified as to amount and sustained.

APPEAL from judgment and order overruling motion for new trial, from District Court, Washoe county; *A. E. Cheney,* District Judge.

The facts are stated in the opinion.

*Torreyson & Summerfield,* for Appellant:

This is a suit for a partnership accounting between respondent and appellant, and is the second trial of this case. The case at bar in the lower court was tried upon the theory of a continuing partnership, and it seems to us that all of the legal principles in the case were settled by the former decision of this court, and this case involves questions of mathematical principles rather than those of legal principles.

If we can show to this court that in the trial of this case in the court below sums were not credited to Lake with which he should have been credited, and that Thompson succeeded to all of Lake's interest in the business, then this court will be convinced that the judgment in the case was erroneous and not supported by the evidence.

Beck is responsible for all of the confusion in which this business is involved, and all doubts and uncertainty arising from such confusion should be resolved against him. (*Kirvan* v. *Henry*, 16 S. W. Rep. 828; 2 Lindsay on Part., 536–538.)

We submit that no system of computation based upon the evidence adduced considered in connection with the decree of this court on the former appeal warrants a judgment in favor of respondent.

*Clarke & Jones*, for Respondent:

On the former appeal in this case the record was unintelligible, and this court decided it upon the theory of a continuing co-partnership, whereas the case was tried and decided below upon the theory that defendant elected to have an accounting, as of the day of Lake's death.

In his lifetime Lake loaned Lake & Beck $10,000, which was used in the business of the firm and for which he took the note of Lake & Beck. When Lake died there was a balance due on this note of $8,800, besides interest. Beck paid this note out of partnership funds. Defendant claims he should have paid it out of his individual funds. In other words, plaintiff claims he should pay Thompson one-half of this note, and defendant claims he should pay it all. The trial court accepted plaintiff's and disallowed defendant's contention. (*Gould* v. *Emerson*, 160 Mass. 438, 439.)

The court did not err in denying defendant's request for additional findings: (1) Because the matters required are not ultimate but evidentiary facts. (2) Because such matters are immaterial. (3) Because such refusal under section 147 of the civil practice act, as amended by act of March 6, 1893, as construed in *Beck* v. *Thompson*, 22 Nev. 109, *ante*, is not prejudicial to defendant, for the reason that the court can consider all such matters under the general assignment.

Beck was clearly entitled to wages for managing the business of Lake & Beck for the entire time. (Lindley on Part-

nership, pp. 774-6; 26 Ohio St. 190, 194; 23 Cal. 422, 430, 432.) In any event he was entitled to pay for managing the business after Lake's death and up to October 6, 1888, when the estate was settled. (1 Bates on Part., sec. 773; 17 Ency. of Laws, p. 1183, note 4; 36 Pac. Rep. 865.)

By the Court, BONNIFIELD, J.:

The material facts and the several transactions involved in this case were reviewed on the former appeal by this court, and are set forth in the case of *Beck* v. *Thompson*, 22 Nev. 109, and need not be repeated here, except in part in considering the questions raised on this appeal. The second trial resulted in a judgment in favor of the plaintiff for the sum of $4,424 64, with certain interest. From this judgment and the order of the court denying his motion for new trial, the defendant appeals. The law of the case was settled on the former hearing by this court, and the basis upon which the second trial should be had was pointed out.

One of the grounds specified in the notice of motion for new trial is "insufficiency of the evidence to justify the decision and judgment," and is one of the assignments of error. Counsel for appellant claim that sums of money were not credited to Lake, Thompson's predecessor in interest, which he should have been credited with, and that erroneous charges for wages were allowed.

1. Our attention is called to the $30,000 transaction, including the promissory note executed by the firm of Lake & Beck to Lake. At a certain date Lake had advanced to the firm of Lake & Beck $30,000 more than Beck, which were used in carrying on the business of the concern, and in acquiring property for the firm. Lake being desirous of drawing out a part of his advances, the firm borrowed $20,-000 of Paxton, for which a promissory note was executed by and in the firm's name to Paxton, and a mortgage given on the property of the firm. This note and mortgage were subsequently paid out of money belonging to the firm of Lake & Beck. Lake received to his individual use the $20,000 borrowed. There still remained · in the concern $10,000 of Lake's advances. For this sum, and to adjust the capital account between M. C. Lake and H. H. Beck, Lake received the promissory note of the firm of Lake & Beck. This note

was paid out of the firm's money. It is strenuously con-
tended by counsel that Lake was a creditor to the amount of
$30,000, and, like any other creditor, should have received
the $30,000 advanced; that the $20,000 borrowed from Pax-
ton and the $10,000 note given to Lake having been paid out
of partnership funds, one-half of which belonged to Lake,
the two transactions resulted in Lake receiving only $15,000
of the $30,000 advanced; and that, to correct this error,
Thompson, who succeeded to Lake's interest, should be cred-
ited with $15,000. The fallacy of this contention is appar-
ent. When one of two partners advances a sum of money
to the partnership concern, and the sum is paid back to him
out of the moneys of the firm, the debt is canceled, and he
has no further claim against the partnership or against his
partner with respect to the matter; and we know of no rule
of law governing transactions between partners, and no rule
in common arithmetic or in common philosophy, that would
give a different result.

2. Counsel claim that the evidence does not sustain the
conclusions of the court as to the rent of the mill property;
that Lake & Beck should have been credited with $400 per
month from the 1st day of May, 1881, the date H. H. Beck
& Co. entered under the lease. In this we think counsel are
mistaken. We find from the record that Bole paid Lake as
rent $100 per month from May 1 to October 10, 1881, when
the mill was destroyed by fire. On June 1, 1892, Lake &
Beck received a credit, for rent, the sum of $1,466 66, and
from that date, including June, they received a credit of $400
per month. It appears from the entries in the company's
books that no rent was charged by Lake & Beck to H. H.
Beck & Co. for the period between the date of the destruction
of the mill, October 10, 1881, and the date of the comple-
tion of the new mill, in March or April, 1882. We therefore
find no error in the rent account as settled by the court.

3. Appellant's counsel object to the allowance of the sum
of $1,000 to Beck for services rendered to Lake & Beck from
February 14, 1885, the date Beck, as surviving partner, ren-
dered his account to the administrator of Lake's estate, up
to the 8th of October, 1888, the date of the distribution of
the estate, when Thompson succeeded to the interest of the
estate in the concern of Lake & Beck and of H. H. Beck &

Co.   They object, on the ground that Beck rendered no serv-
ices to Lake & Beck of material value.   The evidence fully
establishes the value of the services in a sum greater than
the court allowed; but on the former appeal this court held
that Beck was entitled to no compensation for such services
after the formation of the partnership of H. H. Beck & Co.
In this respect the judgment is erroneous.   From the form-
ation of the firm of Lake & Beck up to the organization of
H. H. Beck and Co., Beck received $100 per month salary,
as manager of the business of the concern, by agreement of
the parties.   After the firm of H. H. Beck & Co. was organ-
ized, he received the same monthly salary as its managing
agent, up to the dissolution of the co-partnership; and Bole,
as bookkeeper of the concern, received a monthly salary of
$100 up to the time he withdrew from the firm.   The work
in conducting the business of the new firm was partly
divided between Beck and Bole.   After Thompson became a
member of the firm, he took considerable part in carrying
on the business.   It seems to us, as was said when this case
was here before, "that, after the formation of the firm of H.
H. Beck & Co., the old firm of Lake & Beck ceased to exist,
and consequently we have but the affairs of one partnership
to settle.   After that, Lake & Beck were simply tenants in
common of the mill property, for the use of which they were
to receive a certain compensation over and above the profits
of the business (of H. H. Beck & Co.), the same as Beck and
Bole were to receive extra compensation for their services;
and the firm name of Lake & Beck was simply used by the
bookkeepers of the former firm for convenience of keeping
the accounts of the mill."   The trial court allowed $1,000 in
gross for services rendered to Lake & Beck, including the
Arcadome transaction.   We take it that the court consid-
ered the value of the services rendered in and about the
Arcadome business as being but a small portion of the sum
allowed for services.

Under all the facts and circumstances of this case, and
in the absence of any express or implied agreement appear-
ing to the contrary, we are of opinion that Beck is not
entitled to compensation for services rendered to Lake &
Beck after May 1, 1881, when the new firm, H. H. Beck &
Co., entered into business, and that the judgment should be

corrected accordingly. From Beck's credit of $7,908 74, the district court will deduct the sum of $4,247 10, in place of $3,247 10. With this correction, and the necessary corresponding corrections in the decision, findings, and judgment to be made by the court below, the judgment is affirmed. Each party will pay his own costs on this appeal.