[No. 2500]

E. C. SMITH AND E. J. AMANN, COPARTNERS DOING
BUSINESS UNDER THE FIRM NAME AND STYLE
OF SMITH & AMANN, RESPONDENTS, v. J. T.
GOODIN, APPELLANT.

[206 Pac. 1067]

1. APPEAL AND ERROR—NEW TRIAL GRANTED BY APPELLATE COURT.
    WHERE IT WAS CLEAR THAT WRONG CONCLUSION WAS REACHED.
      Although the evidence was conflicting and there was sub-
    stantial evidence to support the judgment, the supreme court
    will grant a new trial if on all the evidence it is clear that
    a wrong conclusion was reached.

2. BROKERS—IN ACTION TO RECOVER FOR PURCHASING STOCK, EVI-
    DENCE HELD NOT TO SUPPORT JUDGMENT FOR PLAINTIFFS.
      In an action by brokers to recover for purchasing stock,
    evidence *held* not to support a judgment for plaintiffs on the
    assumption that they did not receive a telephone order by
    defendant to sell the stock.

APPEAL from Second Judicial District Court, Washoe
County; *Thomas F. Moran*, Judge.

Action by E. C. Smith and another against J. T.
Goodin.    Judgment    for    plaintiffs,    and    defendant
appeals. **Reversed and remanded. Petition for rehear-
ing denied.**

*Moore & McIntosh*, for Appellant:

All the evidence that the order to sell was not given
is purely negative. The case is not, therefore, within
the rule that a judgment will not be disturbed when
the evidence on material issues discloses a substantial
conflict. "Positive testimony of a single witness should
prevail over the 'strictly negative' testimony of any
number of witnesses, if credibility of the witnesses is
not involved and the question depends solely upon the
abstract efficacy of each species of testimony." 17 Cyc.
800, 801, 804; 22 C. J. 169. "In the analysis and con-
struction of testimony it is elementary that, all other
things being equal, positive testimony on a given point
must always predominate over negative testimony on
the same point." Neiheisel v. Foerge, 4 Redf. Surr. 328–
330; Southern Pacific Co. v. O'Bryan, 45 S. E. 1000;

Atlantic R. Co. v. Newton, 11 S. E. 776; Railroad v. Dickinson, 88 Ill. 431; F. & M. Bank v. Trans. Co., 56 Am. Dec. 68; Reed v. Cramer, 34 Am. Dec. 204. "A mere 'I did not hear' is entitled to no weight, * * * and does not create a conflict of evidence justifying the submission of the question to the jury as one of fact." Culhane v. Railroad Co., 60 N. Y. 137; Haverstock v. Railroad Co., 32 Atl. 1128; C. & A. R. R. Co. v. Gretzner, 46 Ill. 74; Coel v. Traction Co., 133 N. W. 23; State v. Murray, 139 N. C. 540; Cable v. Paine, 8 Fed. 788; Henze v. Railway Co., 71 Mo. 633; Johnson v. Ætna L. I. Co., 158 Wis. 56.

*Stoddard & Salisbury,* for Respondents:

The case falls clearly within the well-established rule of law in this state that where the evidence is conflicting the judgment will not be disturbed, if there is substantial evidence in the record to support it. "If there is a substantial conflict in the evidence, then the duty and responsibility of finding the facts from the evidence devolves upon the trial court, and constitutes a question concerning which this court has nothing to do, even though we may feel that from the whole evidence we should have come to a different conclusion." Gardner v. Gardner, 23 Nev. 215; Dixon v. Miller, 43 Nev. 280; Allen v. Allen, 44 Nev. 243.

"The term 'positive' has been applied in a number of cases to evidence which is direct as distinguished from circumstantial evidence, but a more accurate use of the term is to denote affirmative as distinguished from negative evidence. Evidence is positive where the witness states a certain thing did or did not happen or exist, and negative where the witness states that he did not see or know of the happening or existence of a circumstance of fact." 22 C. J. 66.

Evidence of alleged telephone conversations, even where received at all, must be regarded by the courts with caution, and as being weak and unsatisfactory. Before such evidence can be admitted, the identity of the person at the other end of the line must be clearly

and positively established. Young v. Seattle T. Co., 74 Pac. 375; Planters C. O. Co. v. W. U. T. Co., 6 L. R. A. (N.S.) 1181; Carroll v. Parry, Ann. Cas. 1916E, 971; Williamson Co. v. King, 158 Pac. 1142; Murphy v. Jack, 142 N. Y. 215.

By the Court, COLEMAN, J.:

This action was instituted to recover an amount alleged to be due the plaintiffs (respondents) on account of the purchase of certain stock upon the request of the defendant (appellant). From a judgment in favor of the plaintiffs, the defendant has appealed. We will allude to the parties as they were designated in the trial court.

The undisputed facts are these: On March 25, 1919, the defendant employed the plaintiffs, who were stock-brokers, to purchase for his account 2,000 shares of stock. The defendant, who resides at Lovelock, Nevada, telephoned the order to the plaintiffs at their Reno office. In giving the order, he directed that the stock be sent to him at Lovelock, through the bank, with a draft attached. He had never had any business dealings with the plaintiffs prior to this transaction, and did not know the manager of the company (to whom we will refer as the manager), who took the order over the telephone. On the evening of the day of the order the defendant went to Reno, and called at the office of the plaintiffs, where for the first time he met in person and talked with the manager, being then informed that his order had been filled; the purchase having been made on San Francisco exchange.

There is but one disputed fact in the case to which we need to allude, and that goes to the basis of the defense. It is claimed on the part of the defendant that two days after the stock had been purchased, as stated, he gave the plaintiffs instructions over the telephone from Lovelock to sell the stock, credit him with the proceeds, and draw on him for the difference, and that the plaintiffs agreed to do so. The plaintiffs deny

having received such order to sell. The lower court found for the plaintiffs, and rendered its judgment accordingly.

1. The question to be determined is: Is the evidence sufficient to justify the finding and decision of the court? It is said on behalf of the respondents that the evidence is conflicting, that there is substantial evidence to support the findings and decision of the court, and hence the judgment must, under a long line of decisions, be affirmed. The evidence is conflicting, and there is substantial evidence to support the judgment, and it is true that it is a well-recognized rule in this state that when the evidence is conflicting and there is substantial evidence to sustain the judgment it will not be disturbed; but to this rule, as to nearly all well-established rules, there is an exception, as well recognized by this court as is the general rule, and as promptly and surely invoked and applied when applicable. We know of no better statement of the exception than is found in the language of the court in the case of Watt v. Nevada Central R. R. Co., 23 Nev. 154, 44 Pac. 423, 46 Pac. 52, 726, 62 Am. St. Rep. 772, where it is said:

"Notwithstanding the well-established rule which has been so often announced by this and other courts that, 'where there is a substantial conflict in the evidence, the appellate court will not disturb the decision of the court below,' there is another rule as well established and of as binding force, both in actions at law and in equity, addressed to the conscience and judgment of the court of last resort, which cannot be ignored without doing violence to the plain principles of common justice in many cases, to wit: 'If there be no substantial conflict in the evidence upon any material point and a verdict or decision be against such evidence upon such point, or where the verdict or decision strikes the mind, at first blush, as manifestly and palpably contrary to the evidence, the supreme court will direct a new trial.' Hayne, New Trial and Appeal, sec. 288, and citations; Barnes v. Sabron, 10 Nev. 217.

"The duty of the supreme court to look into the evidence and grant a new trial 'in cases where it appears that the evidence taken all together does not support the verdict or decision or judgment of the court,' is made clear by Stats. 1893, p. 88, as authoritatively construed in Beck v. Thompson, 22 Nev. 121. In that case the court, while recognizing the rule applicable in case of conflict of evidence as given above, said: 'As already remarked, this statute (1893) has worked an important and quite radical change, and in a proper case, without regard to whether there are or are not findings, seems to impose upon this court the duty of reviewing the evidence, and determining whether the final result is supported by it. This statute was undoubtedly designed to cut through many technicalities that have so often prevented cases from being considered upon their merits, and should be construed in the same broad spirit in which it was enacted, but at the same time with such conservatism as will not result in the reversal of a case where substantial justice has been done. * * * Where there is a substantial conflict in the testimony, the appellate court should undoubtedly not substitute its judgment for that of the trial court, and should only interfere where, upon all the evidence, it is clear that a wrong conclusion has been reached.' "

The rule thus stated was recognized at an early date in an opinion by Lewis, C. J., in Reed v. Reed, 4 Nev. 395; and in Beck v. Thompson, 22 Nev. 109, 36 Pac. 562, it is said that the appellate court should reverse the judgment upon the ground of insufficiency of the evidence to sustain the judgment "where, upon all the evidence, it is clear that a wrong conclusion has been reached." Such is the well-recognized rule. 2 Hayne, New Trial and Appeal (Rev. Ed.) p. 1640; Burch v. Southern Pacific Co., 32 Nev. 75, 104 Pac. 239, Ann. Cas. 1912B, 1116.

2. Do the facts of this case bring it within the exception? To answer this question we must review the testimony. As we have stated, it is the contention

of defendant that he gave an order to purchase the stock on March 25 and to sell the same on March 27. Plaintiffs' deny that an order to sell was given. The undisputed testimony shows that on March 25, when the order to purchase the stock was given, it was taken by the manager. It also appears without question that on that evening defendant had a talk with the manager in the office of the plaintiffs in Reno, and again in the Golden Hotel in Reno on April 7. In support of the contention that on March 27 he gave the plaintiffs an order to sell the stock, defendant testified that he went into the telephone office in Lovelock that morning about 9 o'clock, and signified a desire to talk with the plaintiffs at their Reno office; that he was invited into the office of the manager of the telephone company to have his talk; that very quickly he was notified that his party was on the line, and that he at once entered into conversation with the party at the other end of the line. He testified that he asked if it was Smith & Amann he was talking with, and received an affirmative reply, and that he recognized the voice at the other end of the line as that of the person with whom he had talked when he gave the order to buy, who is admitted to be the manager. He also testified positively that he at that time gave an order to sell the stock which he had ordered purchased two days before, directed that he be credited with the proceeds of the sale, and that a draft be drawn upon him for the difference. He testified also that he was informed that that would be satisfactory.

Mrs. Dayton, an operator in the telephone office in Lovelock, testified that on March 27, about 9 o'clock, Mr. Goodin came into the telephone office and requested a connection with the office of the plaintiffs; that it was quickly made, and that Mr. Goodin at once began to talk. She testified also that the office had frequent calls for Smith & Amann, that she knew the manager's voice, and that it was he who answered the call on that

morning, and with whom Mr. Goodin talked. A charge slip of the telephone call of date March 27, numbered 48, showing a charge for a talk between Goodin and the plaintiffs, is in the record.

Mr. Hugh L. Thomas, the superintendent of the telephone company, testified that on the morning of March 27 he was in his private office; that Mr. Goodin came into the telephone office and requested a connection with Smith & Amann, and that he invited him into the private office to talk; that shortly thereafter the operator informed Mr. Goodin that his party was on the line; that Goodin began to talk, and that he heard him give an order to sell the stock in question.

On behalf of the plaintiffs, four witnesses testified, namely, Mr. Smith, one of the plaintiffs; Wm. E. Wald, Frank McCafferty, and the manager. Mr. Smith testified that he was in San Francisco on March 27; Wald and McCafferty that they never answered long-distance calls, that it was the duty of the manager to do so, and that they did not talk with Goodin on March 27. The testimony of Smith may be brushed aside, as it is of no consquence in determining the issue, since it was a physical impossibility for him to have answered the call or to have known whether or not there was one; and the testimony of the other two witnesses must be disregarded, because it was not their duty to answer long-distance calls, and they had never done so according to their undisputed testimony. The only remaining witness for the plaintiffs is the manager, who testified that the firm had had no call from Goodin on March 27, and that he had answered none from Lovelock on that morning. It thus appears that the testimony opposed to that of Mrs. Dayton, a disinterested witness, to the charge slip for the telephone call, to the testimony of Thomas, the superintendent of the telephone company, and to that of Mr. Goodin, is the sole testimony of the manager that he had had no call or talk with Goodin. The defendant is the cashier of the First National

Bank of Lovelock.  He was interested in the outcome of the suit, but not more so than the manager; for if it be shown that the manager failed to comply with the order of Goodin, if it was given, it is rational to presume he would be called upon to make good the loss, and would probably lose his position as a consequence; whereas, if the case is decided against Goodin, the only consequence so far as he is concerned will be the financial loss. Hence there is more likelihood, other things being equal, that the manager, rather than Goodin, would stretch the truth.  Furthermore, there stands the testimony of two disinterested witnesses, and the charge slip, for the defendant.  Mrs. Dayton testified positively that she had frequent calls for the firm, that she knew the manager's voice and that it was he who answered the call on March 27, and who talked with Mr. Goodin.  The charge slip is indisputable evidence of the call.  Thomas, testified to the call having been put in by Goodin, who was called to the telephone to talk with the plaintiff firm, and that he heard Goodin give the order to sell. The truthfulness of this testimony, of the testimony of Mrs. Dayton, and the evidence of the slip, cannot well be questioned; they corroborate the testimony of Goodin.

But we do not believe that either the manager or Goodin stretched the truth.  The probability is that the manager forgot to make a note of the order to sell, and that the entire incident escaped his mind.  March 27, 1919, was during the time of a boom in Divide stocks. The plaintiff firm was receiving many telephone calls ordering the purchase or sale of stocks, all of which the manager answered.  It is easily seen that one who was receiving and answering many calls during the day, as was the manager, is more likely to have overlooked the incident than was Thomas, Mrs. Dayton, who made out the charge slip, and the defendant.

In the language of the court in Beck v. Thompson, supra, repeated in Watt v. Nevada Central R. R. Co.,

supra, it is clear that a wrong conclusion was reached by the trial court.

The judgment is reversed and the case remanded for further proceedings in accordance herewith.

### ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.