MARY C. CHILVERS, Admx. *et al.*

*v.*

SARAH RACE *et al.*

196    71
e205 1266
196    71
214 1370

*Opinion filed April 16, 1902.*

1. DEEDS—*presumption of delivery in case of voluntary conveyance is strong.* The law presumes more in favor of the delivery of deeds in cases of voluntary settlements than in cases of bargain and sale.

2. SAME—*marriage is sufficient consideration for a settlement on wife.* Marriage is sufficient consideration for a trust deed by a husband settling a life estate on his wife, with a life estate to himself if he survived her, and with remainder to her children; and in such case, if the title passes to the trustee for the benefit of the wife it passes for all purposes of the deed, including the provision for remainder.

3. EVIDENCE—*declarations of deceased parents competent to establish parentage of children.* Where defendants to a bill for partition claim title to the property as children of the deceased life tenant, their relationship is established by the uncontradicted declarations of the life tenant that they were her children, and by testimony that they had always lived with her during their childhood.

4. REAL PROPERTY—*when widow has no lien on property for money loaned husband.* Where a husband has only a life estate in property, the fact that the wife advanced him some money to improve the property and recorded the notes does not entitle her to a lien upon the interest in remainder after the husband's death.

5. SAME—*life tenant cannot create charge against remainder-man by improving land.* A life tenant cannot bind the remainder-man by a lease, in which he stipulates to purchase, at the termination of the lease, the buildings erected thereon by the lessee.

6. COSTS—*when the defendants to partition should not pay any costs.* Where a bill for partition denies altogether that certain of the defendants have any interest in the property, and such defendants file a cross-bill claiming the whole estate, which claim is sustained by the decree to the exclusion of all others, such defendants should not be required to pay any portion of the costs.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. CHARLES G. NEELY, Judge, presiding.

This was a bill for partition in the circuit court of Cook county, filed by plaintiff in error Mary C. Chilvers, widow of Robert Chilvers, deceased, alleging that she is the owner of the undivided half of the real estate de-

scribed in the bill. It appears from the evidence and
pleadings that Robert Chilvers, about the year 1850, pur-
chased a forty-acre farm in DuPage county, on which
he lived until he moved to Chicago, ten or twelve years
later, and rented his farm to William Reader. In 1853 he
married Elizabeth Poole, who died in 1880. She had been
married twice before, the first time to George Justice,
who died in 1851. She had two children by her marriage
with Justice, namely, Sarah Race and Frank Justice, de-
fendants in error, who, after her marriage with Chilvers,
lived with their mother and Chilvers, their step-father,
until they reached their majority, and subsequently vis-
ited them. After the death of Justice the said Elizabeth
had married John Poole, but he died soon after, leaving
no children. She then married Robert Chilvers, as above
stated. There was a child born to Robert and Elizabeth
Chilvers, but it died in infancy. In 1858 Robert Chilvers
bought lots 30 and 31, in block 18, in the canal trustees'
subdivision, etc., in Chicago, which property is known as
Nos. 367 and 369 West Taylor street. In the same year
he also bought, by a contract in writing, lot 107 in Crane
& Wesson's subdivision, etc., which is known as No. 210
Blue Island avenue. The title to this lot was not finally
conveyed to him till 1880, when the heirs of the original
vendor, in pursuance of a decree for specific performance,
conveyed to him.

On March 31, 1859, Robert Chilvers and John Taylor
signed, sealed and acknowledged a certain trust deed, in
which it is recited that "Robert Chilvers, party of the
first part, is desirous of making a suitable provision for
the support and separate maintenance of his wife, Eliza-
beth Chilvers, party of the third part, during her natural
life, and to that end hereby intends to execute this con-
veyance to John Taylor, party of the second part, for the
sole and separate use of his wife, independent of her hus-
band, and he therefore, in consideration of the premises
and the sum of one dollar, grants, bargains, sells, etc.,

unto John Taylor, his heirs, etc., lots 30 and 31, and all his right, title, interest, claim and demand in lot 107, in trust, nevertheless, for the following purposes, that is to say, in trust for the sole and separate use, benefit and behoof of the said Elizabeth Chilvers, party of the third part, during and for her natural life, independent of her coverture and free from the debts and control of her said husband, and to collect and receive all the rents, issues and profits of the said premises herein granted and described, and pay the same to the said Elizabeth Chilvers or her order, in writing, as she may at any time direct, for her sole and separate use and disposal, and to give acquittances for the same independent of her husband aforesaid. And upon the further trust, upon the death of the said Elizabeth Chilvers, the said party of the first part surviving, then to collect and receive the rents, issues and profits of said premises and pay the same to him, the said Robert Chilvers, or his order, in writing, during his natural life, and upon his death to convey said premises, in fee simple absolute, to the children of said Elizabeth Chilvers by a former husband, and to the children then living of said Robert and Elizabeth Chilvers, party of the first and third parts, to be equally divided among them, share and share alike. And upon the further trust, the said party of the first part dying during the lifetime of the said Elizabeth Chilvers, his wife, that then and in that case upon her death to convey said granted premises aforesaid in fee simple absolute to the said children herein mentioned, and in like manner and form as herein prescribed and required, their heirs and assigns forever: *Provided always,* that in case the said party of the second part shall die or refuse or neglect to act in the execution of any of the trusts aforesaid, he or his executors or administrators shall convey said premises in fee, and pay over the whole of the trust estate, for the time being, unto such person or persons as the surviving party hereto may, by writing under his or her hand alone, nominate

and appoint to be the substituted trustee of the trusts of these presents, and the receipt of such new trustee shall be a complete acquittance to the said party of the second part, his executors and administrators."

April 9, 1859, Robert Chilvers and John Taylor signed, sealed and acknowledged another trust deed, containing substantially the same language as the preceding, but conveying the forty-acre farm in DuPage county. Both of these trust deeds were signed and acknowledged by the trustee and were recorded in the proper offices shortly afterward. They were found among Chilvers' papers after his death. John Taylor, the trustee, died a few years after the making of these deeds, and no new trustee was ever appointed. The evidence does not show whether the trustee ever had possession of the trust deeds or whether he ever acted under their provisions. There was evidence given in relation to the matter, but it was afterwards stricken out as incompetent. There was no evidence as to who collected the rents prior to the death of Elizabeth Chilvers, but Robert Chilvers collected them thereafter to the time of his death.

After the death of Elizabeth Chilvers, intestate, letters of administration were granted on her estate in DuPage county, and the administrator filed an inventory, in which he described all the real estate which is in controversy in this case, adding that the title was in John Taylor as trustee, for the use of Elizabeth Chilvers during her life, then to Robert Chilvers during his life, then to the children of Elizabeth Chilvers in fee. Citation was issued against Robert Chilvers, and on a hearing he was ordered to pay over a certain sum of money found due the estate of Elizabeth Chilvers, and was further ordered to have the first trust deed re-recorded, as the record of it had been destroyed in the great Chicago fire of 1871. The deed was recorded April 25, 1881.

In May, 1890, Robert Chilvers married the plaintiff in error Mary C. Chilvers, who lived with him till the time

of his death. No children were born of this marriage. Robert Chilvers died September. 6, 1896, leaving a last will and testament, which was duly probated in Cook county, and by which he left to Sarah Dawson, defendant to the bill, after certain legacies of personal property, the rest and residue of all his property, real and personal, but without describing it. The executor nominated in the will resigned, and Mary C. Chilvers was appointed administratrix with the will annexed. Thereafter the widow filed her renunciation and elected to take under the statute.

In 1895 Robert Chilvers built a brick building on lot 30, for which purpose Mary C. Chilvers advanced him $2000, as she testified, and took from him two notes for $500 each for part of the indebtedness. The notes stated that the money was to be applied on the building being then erected on No. 369 West Taylor street. These notes were filed for record, and she claimed that she thereby obtained a lien against this property. Prior thereto, in 1883, Robert Chilvers made a twenty-five year lease of lot 107, which lease, by assignment and consent of the lessor, came to John H. Clough, who having died is now represented on the record by Susan Clough, his executrix. At the end of the term Chilvers was by the terms of the lease to purchase the improvements at their value, not to exceed $4000.

The defendants in error, Sarah Race and Frank Justice, answered complainant's bill and filed their cross-bill, setting up their claim to the property in fee under the trust deeds, and Sarah Dawson also filed a cross-bill, contesting the claim of Mary C. Chilvers to a lien but admitting that she owned the undivided half of the property. Issues were made on the bill and cross-bills, and the cause was referred to the master to take testimony and report the same, with his conclusions. On the coming in of the master's report the cause was heard before the court on exceptions filed by the plaintiffs in error,

but these exceptions were all overruled, and a decree was entered establishing the title in fee in defendants in error, Sarah Race and Frank Justice, and denying any relief to any of the plaintiffs in error, as recommended by the master. Thereupon this writ of error was sued out. The court apportioned the costs equally among all the parties, and defendants in error have assigned cross-errors on this apportionment.

WILLIAM A. CONOVER, LESLIE H. WHIPP, and GARDNER & BURNS, for plaintiffs in error.

HILLIS & McCOY, (CHARLES S. McCOY, of counsel,) for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

The principal contentions of plaintiffs in error are, first, that the trust deeds were never delivered; and second, that they are invalid even if delivered. It appears from the deeds themselves that they were signed and sealed by Chilvers, the grantor, and Taylor, the grantee and trustee. They purport to have been signed, sealed and delivered in the presence of W. H. Davis. They were acknowledged by both Chilvers and Taylor, the notary certifying, in the statutory form, that they acknowledged that they signed, sealed and delivered them, and the certificate of the recorder shows they were filed for record and were duly recorded shortly after their execution. It also appears that the deed to the Cook county property was re-recorded in 1881.

That the execution and recording of a deed by the grantor is *prima facie* evidence of delivery is well established, but this presumption is liable to be rebutted. In *Union Mutual Life Ins. Co.* v. *Campbell,* 95 Ill. 267, it was said that it is successfully rebutted when it is shown that the deed was not in the nature of a family settlement or of a gift to a minor, but is intended to confer no benefit upon the grantee, and its execution and recording

are wholly unknown to him until after the death of the grantor. In *Weber* v. *Christen*, 121 Ill. 91, it is said (p. 98): "It is true, as a general propostion, where nothing appears to show a contrary intention, that if the owner of an estate makes a conveyance of it and places the deed upon record without the knowledge of the grantee, the title will nevertheless pass, if the latter, on being informed of the transaction, assents to it. And where the conveyance is a voluntary settlement, or to one who is not *sui juris*, a formal assent need not be shown, as it will, if nothing further appear, be presumed." The question of the knowledge of the grantee is eliminated in this case, as he and the grantor appear to have signed and acknowledged the deeds together. It was shown, however, that they were in the possession of the grantor in 1876 or 1877, after the death of the trustee, and again in 1884 or 1885 or 1886, and that they were found in his safety deposit box after his death; but there is no testimony showing in whose possession they were prior to 1876, or at the other times not covered by the above dates.

William Reader, an old acquaintance and neighbor of the family, testified that when about to lease the DuPage county property, in 1888, he had a conversation with Chilvers about the extent of his estate or title to the property; that he said to him: "Mr. Chilvers, now you have only a life lease on this property and you are to lease it to me for five years; suppose you died before my five years are out?" "Why," he said, "that is all right; Mrs. Race and Frank Justice get my property when I die and that will be the end of it, and they won't hurt you." He testified that this conversation took place in the office of John Humphrey, in Chicago, but Humphrey testified that he never heard of it and did not think it occurred. After the expiration of this lease Reader continued on the farm without another lease, Chilvers reducing the rent from time to time because he would make no improvements on it. Reader testified that Chilvers said "he only had it

until he died and to let them do the improvements; that the children, Frank and Sarah, might do the rest of it." This conversation was not contradicted. Mrs. Pitcher testified that she never heard about the interest Elizabeth Chilvers had in the property during her husband's lifetime, but that she heard him say his wife would have plenty when he was gone; that it was hers. After the death of Elizabeth Chilvers an administrator was appointed on her estate, who cited Robert Chilvers to give account of her property and papers in his hands. Chilvers denied having any property or papers of hers in his hands. On a trial of the issue in the county court of DuPage county he was ordered to pay her estate $1190.43 and to have the deed to the Cook county property re-recorded. It seems that Frank Justice was the moving party in the matter, as he made some of the affidavits, although he was not a party to the record. An appeal was taken from this order, but it was afterwards stricken from the docket. The deed was re-recorded shortly after the order was made. In the spring of 1896 Robert Chilvers and Mary C. Chilvers went to John Humphrey's office to have the abstract of title to this property examined by him, and were told by Humphrey that the record title was in John Taylor, and it would be useless to make the deed to the property she wanted, to secure the money she said she intended to let him have.

In regard to the control of the property and the collection of the rents there is no evidence about the period prior to the death of Elizabeth Chilvers, except as to part of the year just preceding, and all such control and collection of rents subsequent thereto would not be adverse to Robert Chilvers' equitable life estate therein, but in subordination thereto. There is no evidence as to the acts of John Taylor, the trustee named in these deeds of trust, in regard to the trust. It seems that he died a few years after their execution and no new trustee was ever appointed. The trust deeds provide that if

the trustee shall die or refuse to act, Robert or Elizabeth Chilvers shall appoint a new trustee. This was not done, but Chilvers seems to have acted as his own trustee.

Counsel for plaintiffs in error insist that the fact that the deeds were found in the grantor's possession rebuts the presumption of delivery arising from the recording of the deeds and the acceptance of the trust by the grantee. But there is no evidence whatever in the record as to who had the deeds from 1859 to about 1876. After the death of the trustee, and more especially after the death of Elizabeth Chilvers, it would have been natural, and not improper, that Robert Chilvers should take possession of the deeds and hold them. He had a life interest under them and the power to appoint a successor in trust. The admissions of Chilvers to Reader against any interest of his in fee simple and in confirmation of the deeds are some evidence on the question as to the effect which he ascribed to his acts in conveying the property. The fact that one of the deeds was re-recorded in 1881 is also proper to be considered. If the deeds were never delivered and never became operative there was no reason why one of them should have been again recorded. "It must be remembered that the law presumes much more in favor of the delivery of deeds in case of voluntary settlements, especially when made to infants, than it does in ordinary cases of bargain and sale. The same degree of formality is never required, on account of the great degree of confidence which the parties are presumed to have in each other, and the inability of the grantee frequently to take care of his own interests." (*Union Mutual Life Ins. Co.* v. *Campbell*, 95 Ill. 267.) The settlement contemplated by the deeds was a voluntary settlement for the benefit of the wife of the grantor and for her children, members of his family, and was made before the married women's acts were passed, and when it was usual, in making such settlement upon the wife, to convey property to a trustee for her benefit. The property was to be

held under these deeds in trust for the wife for her life, then for the grantor for his life, and then to be conveyed in fee to the children of the wife by a former husband, and to her children, if any, by the grantor.

Taking into consideration the presumptions of law and all the facts and circumstances in connection with the grantor's dealings with the premises, we think the conclusion is fairly warranted that the deeds were delivered and became operative.

*Second*—The validity of the deeds is attacked on the grounds that the consideration was only nominal and that defendants in error were strangers in blood to the grantor. As said above, they were in the nature of a voluntary settlement for the benefit of the wife and her children, and marriage has ever been held a sufficient consideration for a settlement on a wife, as against all but existing liens. Such settlements are sustained, both in law and in equity. (*Sanford* v. *Finkle,* 112 Ill. 146.) Defendants in error were children living with their mother and step-father at the time the deeds were made,—members of his family; and besides, the remainder was limited to all the children of grantor's wife, including any children of the grantor, if there should be any in being at the death of the life tenants. This shows that he put his step-children on an equality with his own. If the title passed to the trustee for the benefit of the wife, it passed for all purposes of the deed, including the remainder to defendants in error. This was an executed trust, for it was fully and finally declared by the grantor, so that nothing further remained to be done to make it effective, and as such it will be executed in equity. *Lynn* v. *Lynn,* 135 Ill. 18.

It is contended that there is no proper proof in the record showing that defendants in error are the children of Elizabeth Chilvers. Sasan Pitcher testified that she had known Elizabeth Chilvers for forty-three years before she died; that she had told her that she had two

children by George Justice,—Susan and Frank; that witness knew them in Chicago and in Downer's Grove, while they were living with their mother; that during their childhood they never lived anywhere else than in the home of their mother; that after their mother's marriage with Chilvers they lived in the family all the time until they were large enough to work. William Reader testified that he had known the defendants in error ever since they were children, and had seen them frequently when they lived on the Chilvers farm; that Chilvers said Frank and Sarah would get the property after his death. Here were proved the declarations of Elizabeth Chilvers that the defendants in error were her own children by a former husband, and also the fact that these children lived with their mother and step-father as members of the family. No one, certainly, was more competent to state who her children were than the mother. The declarations of parents who are deceased are proper evidence in such cases. (*Metheny* v. *Bohn*, 160 Ill. 263.) As the relationship is sufficiently established by this testimony, which was not contradicted by any one, it is unnecessary to pass on the question of the admissibility of the evidence of Frank N. Race, the son of Sarah Race, that she and Frank Justice were reputed in the family to be the children of Elizabeth Chilvers.

The court below decided that Mary C. Chilvers had no interest in or claim on the property, and that the estate of John H. Clough had no valid interest or claim by virtue of his lease. The decision of the court was right. When Chilvers died his estate ended and there was nothing to pass to his widow, and she acquired no lien on the remainder by the loan to him and the notes he gave her.

The claim of the Clough estate was for the amount stipulated in the lease at which the lessor covenanted to buy the improvements at the expiration of the lease. As the lessor was merely a life tenant he could not execute a lease with covenants binding on the remainder-man.

Nor can the lessee plead his ignorance of that fact. The deed to this Blue Island avenue property had been re-recorded in 1881, and the lease was made in 1883. The lessee was bound by the record to know the state of the title. It does not appear from the evidence when these improvements were put on the premises. A life tenant, by placing permanent improvements on the land, however much they may enhance the value of the estate, can not thereby create a charge for the money thus expended against the remainder-man. Such improvements must be deemed to have been made by the life tenant for his own benefit and enjoyment during the continuance of his own estate, and upon the termination of the life tenancy, they being a part of the realty, pass as such to the one in whom the remainder vested, and he takes them without any liability to recompense the life tenant for his expenditure. (*Hagan* v. *Varney*, 147 Ill. 281.)

The apportionment of the costs is assigned as cross-error. Each party was ordered to pay one-fifth of the costs. The original bill was a bill for partition, to which defendants in error filed their cross-bill, claiming the whole estate. As to the interests of defendants in error, the original bill merely alleged that Sarah Race claimed to have some interest and that Frank Justice was dead, the latter allegation being afterwards stricken out. It made no attempt to set out the interests as claimed by defendants in error. The result of the suit is that the rights of defendants in error are fully established to the whole of the property in controversy, to the exclusion of all others. While the adjudication as to costs is in the discretion of the court in chancery cases, still it should be based upon equitable grounds, and this court has in some cases disapproved of the orders of the chancellor in relation to costs. (*Drake* v. *Phillips*, 40 Ill. 388; *Linton* v. *Quimby*, 57 id. 271; *Price* v. *Blackmore*, 65 id. 386.) The interests of defendants in error were controverted altogether by the plaintiffs in error, and they were compelled

to file their cross-bill for relief.    We are of the opinion they ought not to be compelled to pay any part of the costs in this case.

The decree will be affirmed in all respects except as to the costs, and in that respect it will be modified, and the plaintiffs in error will be required to pay all the costs, both in the court below and in this court.

*Decree modified and affirmed.*