## WALKER BROTHERS BANKERS *v.* JANNEY

No. 2882

August 5, 1930.                                    290 P. 413.

*A. L. Scott* and *James Ingebretsen,* for Appellant:

*F. E. Wadsworth,* for Respondent:

## OPINION

By the Court, DUCKER, C. J.:

This is an action on a promissory note which reads as follows:

"$4751.00.                    Salt Lake City, Utah,
                                 "April 19, 1920.

"One year after date, for value received, I promise to pay to Walker Brothers Bankers, at Salt Lake City, Utah, or order, Forty Seven Hundred Fifty One Dollars with interest at the rate of four (4) per cent per annum, from date until paid, both before and after judgment, interest payable monthly. And I hereby agree, that in case this note is collected after maturity by an attorney, either with or without suit, to pay Five Hundred Dollars attorney's fee.

                          "[Signed]   John Janney."

The parties will be designated as in the lower court. In his answer defendant admits the execution of the

note, but alleges that there was a failure of consideration. In this connection a contemporaneous oral agreement is set up to the following effect: Prior to the date of the note certain Nevada corporations were indebted to plaintiff in the sum of $4,751. These corporations were then insolvent and unable to meet said obligation. One E. O. Howard, as cashier and agent of plaintiff and in its behalf, agreed with defendant that if he would execute and deliver said note in lieu of said indebtedness of said corporation, in consideration thereof plaintiff would cooperate with the defendant in financing the Pioche Mines Company, a corporation. It is alleged in the answer that defendant relied upon the promise and agreement of the plaintiff and would not otherwise have executed the note. Matters are set out in the answer to show a violation by plaintiff of the alleged agreement.

A counterclaim was set up, but as no evidence was introduced in support thereof it needs no further mention.

The agreement pleaded in the answer was denied in plaintiff's reply and was alleged therein to be ultra vires of said plaintiff bank, against public policy and void.

The case was tried before a jury which returned a verdict for defendant. Plaintiff's motion for a new trial was denied. This appeal is taken from an order denying its motion for a new trial and from the verdict and judgment.

■■ There is but one question to be determined. Is the evidence sufficient to establish the contemporaneous agreement claimed by defendant? We are of the opinion that it is not. The lower court concluded that the evidence on this issue was conflicting, and for this reason denied the motion for a new trial. The defendant takes the same view. While the evidence is conflicting as to the agreement asserted, it is not of that substantial kind to foreclose the reversal of the judgment for insufficiency of evidence. Taken in its entirety the evidence in this case brings it squarely

within the facts and ruling of Smith v. Goodin, 46 Nev. 229, wherein we reversed the judgment, notwithstanding there was evidence to support it. In Smith v. Goodin, plaintiff's judgment recovered in the lower court rested on the testimony of one witness, which was flatly contradicted by the testimony of the defendant and which latter testimony was so corroborated by other circumstances in evidence as to make it clear that on the whole evidence a wrong conclusion had been reached. This is the situation here. The verdict of the jury rests upon the testimony of the defendant Janney. He testified to the making of the agreement with one E. O. Howard, vice president of the plaintiff bank. The latter testified that no such agreement was entered into, and his testimony is borne out by the circumstances to such an extent as to indicate clearly that the verdict finds no reasonable basis in the evidence. On the trial of the case plaintiff introduced in evidence the note sued on; proved that it was the holder thereof; that the note was unpaid, and rested its case. Whereupon the defendant, John Janney, took the stand as a witness in his own behalf. He admitted the execution of the note, and his version of the transaction which resulted in the agreement claimed is substantially that said E. O. Howard, then vice president of the plaintiff bank, met him on the street in Salt Lake City and requested him to come to the bank and see him, which he did on April 19, 1920. Howard produced two notes which he had on his desk, one of which was made by the Bullion Transportation Company and endorsed by the defendant, and one P. B. Locker, as guarantors. The other note was signed by defendant and P. B. Locker. There was no mention made by Howard of the latter note. Howard had the former note right in front of him and said: "John, what are you going to do about this bull con note?" Defendant testified that he made this reply to him: "I said to him—'Mr. Howard, I can see how those notes can be made good. I am a big holder of stock of the Pioche Mines Company and if I can finance the Pioche Mines Company — put that

company on its feet — the effect of those two notes would be very small. If you will cooperate — your bank—in financing that company, I am ready right now—ready to finance the company and I will personally assume all those obligations,' and Mr. Howard said to me: 'Will you make your personal note?' and I said, 'Yes.' Then he said, 'all right—make it a four per cent note.' So I in that conversation committed myself to go to work and finance the Pioche Mines Company—putting this business on its feet. I said, 'Then I will be in a position to assume those obligations,' and I agreed to do so. * * * I said to Mr. Howard: 'Mr. Howard, you know that I didn't get any money on either note'—personally I got no money and I reminded him further of the fact that the bank had loaned the money before I signed the note."

The foregoing is all the testimony there is having any tendency to establish an agreement. It will be observed that it is most indefinite. No specific terms or conditions are stated. The most that the testimony tends to establish is that in consideration of the execution of the note by defendant, plaintiff was to cooperate in financing the Pioche Mines Company. How it was to cooperate, either by furnishing money or otherwise, does not appear.

Mr. E. O. Howard testified for plaintiff. In regard to the transaction with the defendant in the office of the bank at Salt Lake City, he denied that he was asked by the defendant to cooperate in financing the Pioche Mines Company, or that he agreed to do so. He testified that at the time of this meeting and conversation, defendant was indebted to the bank; that this indebtedness was evidenced by two notes long past due, one of which was given for $3,500 and the other for $536.64; that the former had been given in lieu of two notes for money advanced to two companies in which defendant was interested, the Bullion Transportation Company and the Nevada Phoenix Mining Company; that the money was loaned to these companies on the endorsement of one P. B. Locker and defendant; ·

that when the notes became due and the companies were unable to pay them, the bank took in settlement the note for $3,500 signed by P. B. Locker and defendant; that the other note which defendant had given to the bank for $536.64 was for accrued interest; that these two notes were on his desk before him at the time of his conversation with defendant. Howard testified also that he discussed the indebtedness with defendant and asked him if he could take care of it. His version of what was said and done is that defendant said: " 'I will pay the note but I must have time.' I replied that we would be glad to give him a reasonable time, that I knew he was engaged in operations that would take time to work out, but that I wanted to get the note in proper bankable shape. I voluntarily made a reduction in the accumulated interest and told him I would give him a year's time, which I thought would be sufficient at least to make a partial payment, which he agreed to do. I told him I would take his note at a very low rate of interest, namely, 4 per cent, and give him a year's time to pay it. That was the substance of the conversation. It was agreed to—the note was prepared, he executed the note, and the note is now 'Exhibit A' here and is the matter at issue."

Howard also testified that the amount of the note sued on was arrived at by taking the $3,500 note and the note of $536.64, together with accrued interest on the former note up to the date of April 20, 1920. This testimony shows a valid consideration for the note in question. In this respect it is undisputed, for the defendant does not deny his liability as a guarantor on the former notes. He admitted that after the transaction at the bank that the note for $3,500 was returned to him. This note is in evidence and across its face, signed by E. O. Howard, president, is the following endorsement: "Renewal of this note accepted this date, May 11, 1920." On the back of the $3,500 note appears this endorsement: "$536.64 int. due @ 7 per cent to Apr. 19—" which Howard testified was in his own handwriting. The following memorandum also appears on the back of the note: "April 19, 1920

$4,751. one year at 4 per cent" which defendant admitted was in his handwriting. These are circumstances tending to support Howard's testimony.

As to the consideration of the note in question, other circumstances bearing on the issue and against defendant's testimony are three letters introduced in evidence by plaintiff, two of which were written by defendant to Howard and one written by the latter to the defendant. In a letter written from Pasadena, California, to Howard at Salt Lake City and dated June 13–21, the defendant wrote as follows: "It was about a year ago I was in Salt Lake City and you asked me for a 12 mos. note to cover an old account. I didn't feel at the time that I could pull things around in time to pay, but you seemed to wish it and I am now not in a position to do anything but pay interest. I will ask you to send me a renewal 12 mos. note for signature, and the amount of interest. I do not expect to be able to pay the note in toto in 12 months but I do expect to be able to make a substantial payment then if I get back my strength to normal, which I am glad to say I am doing slowly but steadily." To this Howard answered in a letter of date June 26, 1921, as follows: "I am very glad indeed to receive your letter of the 13th, but sorry to know that you have been ill and in the hospital. Too much work, I am afraid. Your note in our favor for $4,751 dated April 19, 1920, was given for one year at 4 per cent. The interest to April 19, is $224.87. Please send us a check for this amount, and we will then renew the old note for another year. In addition to the above there will be due 96 cents for revenue stamps on the old note, making a total of $225.83." In reply to this defendant wrote from Pasadena in letter dated Sept. 21, 21. "My dear Mr. Howard: I have been detained in California much longer than I expected. The matter of attending to some teeth took a pretty bad turn with me resulting in an operation on my jaw to dig out a dead root, and not being able to eat solid food was a backset coming just when it did. I was getting on my feet fast when this happened. I am therefore not able to return to

work as soon as I expected and will be compelled to ask your indulgence in sending the check I had expected to send you in my last letter. * * * "

These letters support Mr. Howard's version of the transaction in the office of the bank when defendant executed the note in question. They clearly relate to that note. In the first letter written a little over a year after that transaction defendant is seeking an extension of time in which to pay. He asks for a renewal of 12 months and promises to pay the interest. In Howard's reply a renewal of the old note for one year is promised on condition that defendant send a check for the year's interest. Defendant fails to do this for the reason given in his reply. In neither letter is any mention made of any agreement. Defendant is promising to pay without reference to any obligation on the part of the bank to cooperate in financing the Pioche Mines Company, of which defendant is president. This is, to say the least, a singular omission on the part of a man of business where a large sum of money is involved. The defendant offered no explanation of this significant circumstance, except that he intended to pay the note in question. If he intended to pay he was evidencing no interest in the condition upon which, under his contention, his promise to pay was given.

The evidence on the whole indicates plainly that the verdict is wrong. The burden was on the defendant to establish his defense of failure of consideration by a clear preponderance of the evidence. The burden cannot reasonably be said to be supported by defendant's testimony as to an agreement of an indefinite nature stated in the face of the ample evidence to the contrary found in the record. This case must be distinguished from the case of Dixon v. Miller, 43 Nev. 230, 184 P. 926. In that case the testimony of respondent tended to show very definite terms for the note in question, and the testimony of the appellant was not supported by other evidence as in this case.

The judgment is reversed.