# CONSOLAZIO *v.* SUMMERFIELD

No. 2967

April 25, 1932.                                        10 P.(2d)629.

*W. M. Kearney,* for Appellant:

*Lester D. Summerfield,* in Pro. Per., and *Brown &
Belford,* for Respondent:

## OPINION

By the Court, COLEMAN, C. J.:

This is an action to recover upon a claim rejected by the executor of the estate of Peter Steffes. Judgment was rendered in favor of the executor. Plaintiff has appealed from the judgment and the order denying a motion for a new trial.

In this opinion we will allude to the parties as plaintiff and defendant, and to the deceased as Steffes.

The paper which was the basis for the claim filed with the executor, and which was sued upon and frequently referred to in the trial as a note, reads as follows:

"Reno Nev                                        Dec 27—1929

"I owe D. Consolazio the sum of Four Thousand Dollars 4000.00 in American coin any demand maid for said money is to be paid back at once with Interest at 6% six per sent

"X Peter Steffes"

The claim filed with the executor demanded accrued interest to the date of payment.

There is no assignment of error in this case as required by law. Shirk v. Palmer, 48 Nev. on page 458, 232 P. 1083, 236 P. 678, 239 P. 1000; Smith v. Lucas, 43 Nev. 348, 186 P. 674.

Since the assignment of errors is jurisdictional (Coffin v. Coffin, 40 Nev. 345, 163 P. 731), this appeal should be dismissed; however, we will dispose of the matter upon the merits.

The assignment in behalf of the plaintiff is confined to the proposition that the evidence is not sufficient to justify the judgment.

Counsel for the plaintiff cites several authorities to

the effect that "It is mockery to talk of evidence if it is discretionary with the tribunal to which it is addressed to disregard it when uncontradicted and unimpeached," citing, among many others, the following authorities: Newton v. Pope, 1 Cow. (N. Y.) 109; Decker v. Braverman, 196 Ill. App. 387; Atlantic Coast Line R. Co. v. Drake, 21 Ga. App. 81, 94 S. E. 65; Baranov v. Scudder, 177 Cal. 458, 170 P. 1122; Chilvers v. Race, 196 Ill. 71, 63 N. E. 701; Louisville & Nashville R. Co. v. Harned (Ky.), 66 S. W. 25; 10 Cal. Jur. 1143.

It is quite probable that the rule invoked is sound, but we do not find that the case falls within the rule, since there is contradictory evidence in the record, and certainly some of the evidence is self-impeached.

■ The general rule of this court is that when the evidence is conflicting and there is substantial evidence to sustain the judgment it will not be disturbed. But there is an exception to the general rule to the effect that where, upon all the evidence, it is clear that a wrong conclusion has been reached, the judgment will be reversed. Reed v. Reed, 4 Nev. 395; Dalton v. Dalton, 14 Nev. 419; Watt v. Nev. Cent. R. R. Co., 23 Nev. 154, 44 P. 423, 46 P. 52, 726, 62 Am. St. Rep. 772; Burch v. Southern Pac. Co., 32 Nev. 75, 104 P. 225, 239, Ann. Cas. 1912B, 1116; Smith v. Goodin, 46 Nev. 229, 206 P. 1067; Walker Brothers Bankers v. Janney, 52 Nev. 440, 290 P. 413.

■ Looking at the evidence in cold type, we are frank to say that we think the judgment should be for the plaintiff; but the cold type does not always present the picture as it appears in its making. The demeanor of the witnesses, their manner of testifying, and a variety of things may develop before the trial judge which cannot be presented in the record. For these reasons, the exception to the general rule stated above is rarely found to exist. In a case where one of the parties to the alleged transaction is dead, we should be even more guarded than in the ordinary action in which both parties appear. In fact, it is generally recognized that claims against the estate of a deceased person should

be established by very satisfactory evidence, and that such claims and the evidence advanced to support them should be carefully scrutinized so as to prevent, as far as possible, the allowance of unjust or fictitious demands. 24 C. J. 404.

. In the light of the observations, let us consider the record. The case was called for trial April 10, 1931. The plaintiff, after giving the usual preliminary testimony, testified that on December 27, 1927, he got from Steffes the note in question, for which he gave Steffes $4,000, and that no part of it had been returned to him. He testified he saw Steffes sign it on the desk in the office in the county jail at Reno. The note was admitted in evidence as exhibit A. On cross-examination the witness testified that, because of trouble he was having with his wife, he gave the money to Steffes to keep for him, and that he was not entitled to interest. The witness also testified that during the time Steffes was county jailer he served a term of nine months in said jail for violating the prohibition law, during which time he was a trusty.

At the conclusion of this evidence the plaintiff rested his case. Thereupon the defendant made an application for leave to have a handwriting expert examine the note. The court continued the case to April 25, 1931. On that date, a preliminary motion having been disposed of, the plaintiff asked leave to open his case and offer further evidence. The court granted the application, whereupon E. N. Landers and Thos. W. Bath, Jr., were called as witnesses in behalf of the plaintiff. The witness Landers testified that on a Sunday about a month prior to the death of Steffes he had a conversation with Steffes in which he stated to Steffes that he soon would want to borrow some money; that the deceased asked why he did not borrow it from the plaintiff; that he (Steffes) knew that the plaintiff had the money, as he had in his possession $3,500 or more belonging to him. Bath testified that shortly before the death of Steffes in November, 1930, he was in the place of business of the plaintiff, where

he saw Steffes and heard him ask the plaintiff when he wanted his money, to which the plaintiff replied, "After the holidays."

Thereupon the plaintiff rested his case.

In opposition to the foregoing testimony the defense called several witnesses. J. D. Hillhouse testified that, at the time of the death of Steffes, the witness was sheriff of Washoe County, Nevada, and had been such for some years; that Steffes had been his day jailer for about eight years; that he was on intimate terms with Steffes; that they frequently discussed his affairs; and that at no time did Steffes mention having any money belonging to the plaintiff. He also testified that Steffes, during the time he served as jailer, had access to a safe in the jail office; that the witness frequently checked the cash and property in that safe; and that he never saw any larger sum therein than $700. Thorough search by Hillhouse, the witness Trathen, the executor, and inquiry among the banks and other places, failed to disclose $4,000 or any other sum belonging to Steffes traceable to the money alleged to have been deposited by the plaintiff with him, or at all, except as hereinafter stated. The executor testified that he had known Steffes intimately since 1914, and that during that time Steffes frequently consulted him and talked over his affairs; that he drew the will of Steffes; and at no time did he allude to having received money from the plaintiff.

Witness Harris, assistant cashier of the First National Bank, testified that the deceased had a savings account in his bank at the time of his death; that on July 1, 1929, the deceased had a balance of $15,619.99; on January 7, 1930, he had a balance of $16,029.36; and that on July 1, 1930, interest in the sum of $319.36 was added; that on July 7, 1930, a deposit of $300 was made; that on January 1, 1931, interest was added, making a total of $16,880.23. The witness testified that Steffes did not have a checking account with his bank, and though he had a safe deposit box, examination thereof disclosed no money or thing of value.

Steffes died suddenly, and $200 in cash was found on

his person. This is the entire pertinent testimony in behalf of defendant, except that of the experts.

The defendant conceded at the trial that the signature on the paper in question was that of Steffes, and urges the theory that the plaintiff, while serving a term in jail in 1921–1922, got possession of the paper with the signature of Steffes thereon and erased therefrom writing, and had the matter filled in which is now relied upon.

In support of this theory, E. O. Heinrich was called and qualified as a consulting criminologist practicing in the field of chemistry as a part of his business, as well as in the examination of disputed handwritings.

This witness testified that he had examined plaintiff's exhibit A, the document sued upon; that he examined it "with a suitable magnification and binocular vision with suitable lighting, the light being brought onto the document from various angles, obliquely and directly, and also on inspection of the document under the ultraviolet ray lamp. The first step in the examination was an inspection without reference to magnification."

He testified that the signature of Peter Steffes was written prior to the other writing now appearing on the paper, and that it was put there in accordance with a different text than now appears.

In support of his conclusion, he testified that the subject matter of the document is irregularly placed with respect to the signature; that the first section of it, consisting of five lines plus the date and place where written, are spaced with fair uniformity; that the last two lines are spaced increasingly apart with reference to the upper portion of the note; that the right and top edge of the paper had been torn as an act of trimming; that the bottom and left edges had been cut with a sharp instrument; and that the writing was done prior to the trimming of the paper.

The witness further testified as follows: " * * * That there was evidence in the third line of the text over the word *in*, and in the fifth line of the text, running from the *y* of the word *money* through to the end of the word *paid*, and particularly over the words *to*

*be,* there was evidence of some pencil writing which had been on this paper prior to the writing which is now on the paper. The word—the deletion of the pencil writing was too complete to enable it to be read, but in the area over the words *to be* in line five, I was able to read most of the word. It is the—it seems to be the word *possibly,* I see distinctly *o, s, s, i, b, l, y.* This writing is a little smaller than the writing which is now on the paper, and there is evidence of cleaning of the paper extending in the area from the right edge to the vertical line, extending through the *e* of the word *owe,* and down vertically to the *s* of the word *interest,* and down the page. The maximum effect or abrasion of the paper showing some cleaning action surrounding the area which now carries the words *once with.* I could get no information from the ink as to the time of the writing of the text or the signature with respect to each other; the inks are both of the same character, chemically and physically, and are permanent black ink, and write black at the time written."

He also testified that in other areas of the paper on which the note was written there is evidence of cleaning of the paper.

Two experts were called by the plaintiff, who testified that they could find no evidences of writing upon the paper prior to the placing thereon of the obligation sued on.

At the conclusion of the foregoing testimony, the defendant rested his case.

The plaintiff called in rebuttal one Pinkston and one Gardelli. Pinkston testified that he worked part time for plaintiff at the Sierra Beverage Company in Reno; that on December 27, 1929, he wrote, at plaintiff's dictation, the body of the note; that the signature was not on the note at the time he wrote it; and that he put the X at the point at which Steffes was to sign. He also testified that the paper was of the same size as now, and that there was no writing on the paper at the time.

The witness Gardelli testified that just about Christmas

in 1929 he went in a car with the plaintiff from the Sierra Beverage Company to the county jail in Reno, where he saw the plaintiff hand to Steffes a bunch of greenbacks, which Steffes put in the safe and gave plaintiff a receipt therefor.

On cross-examination, he testified as follows:

"Q. How close were you to Mr. Steffes? A. Not very close.

"Q. How close? A. About seven or eight feet. * * *

"Q. Were you in the office? A. No, I was on the outside.

"Q. What? A. I was in the door.

"Q. You were not in the office? A. Yes, I was in the office.

"Q. You were in the office? A. Yes, I was in the office.

"Q. You were in the office? A. Yes.

"Q. About seven or eight feet from Mr. Steffes? A. Yes, about three or four feet; I don't remember.

"Q. You say three or four feet now? A. I don't remember. * * *

"Q. How near to Mr. Steffes were you? Were you two feet, or three feet, or four feet, or how far? A. Three or four feet."

█ We think there is a clear conflict in the evidence, and that there is substantial evidence in the record to support the judgment. The evidence of Professor Heinrich standing alone justifies this statement. He testified that the signature of Peter Steffes was written on the paper prior to the writing of the matter constituting this demand. The question is, then, Do the facts bring the case within the exception to the general rule stated; that is, that it is clear that a wrong conclusion was reached by the trial judge?

After carefully weighing the evidence, we are unable to say that it is clear that a wrong conclusion was reached.

The plaintiff impeached himself. He filed a claim, sworn to, in which he asserted that the note bore interest. On the witness stand he swore that the claim bore no interest; that Steffes was simply holding the money

for him. If he was capable of demanding the interest which he admittedly was not entitled to, he was capable of fabricating the whole case, and of manufacturing whatever evidence might be needed to assure his success at the trial. The testimony of the witness Gardelli bears earmarks of fabrication. If the plaintiff took him to jail at all on December 27, 1929, he took him for the purpose of having him act as a witness, as he must have known; yet, from his testimony, he did not know whether he was eight feet from Steffes or two feet when he said the money passed. In fact, he first testified he was out of the room. We think the trial court was justified in rejecting his testimony, and, in that event, he was doubly justified in rejecting the testimony of plaintiff. If he expected to get a signed statement from Steffes, which was regular in every respect, why was a witness necessary at all? Furthermore, in view of the contest made in this case by the defendant, one would think that plaintiff would have brought forward this witness, if he had him, before the expert testified. In our opinion, the court had a right to look upon this evidence, not only with suspicion, but as spurious. What we have said of this witness is more or less applicable to one or two other witnesses for the plaintiff. It looks like a case of the plaintiff saying, when threatened: "Wait till I go out and get some more witnesses." Of course he presents an excuse for not having called two other witnesses. One of those witnesses had been discharged for drinking, and his entire story does not ring true. The other witness' testimony was indefinite.

Steffes had about $15,000 in a savings bank on December 27, 1929, drawing 4 per cent. Is it likely that he, a man of seventy-five years of age, with his experience, would have signed a paper agreeing to pay 6 per cent? Furthermore, no trace of the money could be found. It was not in the safe where plaintiff and Gardelli testified he put it; he did not deposit it in the bank; he never referred to it in conversation with Sheriff Hillhouse or his attorney who had advised him

for fifteen years, free of charge, and who drew his will and now acts as his executor.

We cannot say that it is clear that the trial court reached a wrong conclusion.

Judgment affirmed.