ROY CRAM, Appellant, *v.* WES DURSTON, INC., Respondent.

No. 3677

November 9, 1951.                    237 P.2d 209.

*Taylor & Gubler,* of Las Vegas, for Appellant.

*Schultz & Schultz,* of Las Vegas, for Respondent.

504

## OPINION

By the Court, MERRILL, J.:

At the time of the transactions which are the subject of this action, appellant, a contractor operating out of Las Vegas, Nevada, possessed several items of heavy equipment located in Lincoln County, Nevada. These included two Caterpillar tractors and three Terra Cobra scrapers. One of the tractors had been purchased from one Cashman of Las Vegas on conditional sale and a balance of over $6,000 was due on the purchase price. The remaining items were mortgaged to the Nevada Bank of Commerce in Elko, Nevada, for the sum of $38,000.

Respondent operated as a dealer in used heavy equipment in Los Angeles, California.

This action was brought by respondent as plaintiff

for breach of warranty of title and fraud. It alleged purchase of the Cashman tractor from appellant for $14,000 upon the assumption that appellant's title was free and clear; that it had been compelled to pay off the Cashman balance with consequent damage.

Appellant in defense and as counterclaim contended that his contract of sale with respondent was not for the single tractor alone, but was for all five items of equipment for the sum of $58,000 ($14,000 each for the tractors and $10,000 each for the scrapers); that respondent knew of the purchase balance to Cashman and of the mortgage to the bank; that the payment of $14,000 had been on account of the entire purchase price; that the equipment had all been delivered to respondent in Los Angeles; that respondent had defaulted on the payment of the balance and that appellant had accordingly been required to repossess the mortgaged equipment which had then been sold by appellant to a third party at a substantial loss with consequent damage.

The case was tried before a jury which brought in a verdict for respondent in the sum of $6,442.03. After judgment upon the verdict, motion for new trial was made by appellant and denied by the trial court. This appeal is from the judgment and the order denying new trial.

Appellant's first and principal assignment of error is that the verdict and judgment are contrary to the evidence and the law. The general proposition of law upon which appellant relies in this connection is that stated in Consolazio v. Summerfield, 54 Nev. 176, 179; 10 P.2d 629, 630: "The general rule of this court is that when the evidence is conflicting and there is substantial evidence to sustain the judgment it will not be disturbed. But there is an exception to the general rule to the effect that where, upon all the evidence, it is clear that a wrong conclusion has been reached, the judgment will be reversed."

In our view the quoted "exception" cannot apply to

the record before us. The testimony of respondent's president, Wes Durston, in support of the complaint and in opposition to appellant's contentions was clear and positive and the jury cannot be criticized for choosing to regard it with belief.

Upon appellant's cross-complaint, the essential question is whether a contract existed for sale of the equipment mortgaged to the Nevada Bank of Commerce, which contract was broken by respondent. Appellant contends that the evidence conclusively establishes this to be the fact. Heavy reliance is placed upon the following letter:

"Nevada Bank of Commerce

"Elko, Nevada

"Gentlemen:

"We are purchasing the following equipment from Mr. Roy Crams, Las Vegas, Nevada, on the following basis:

"3—Woolridge Terra Cobras @ $10,000 each; total $30,000.00

"1—2U Caterpillar Tractor with Power unit and Dozer @ $14,000.00

"Upon the sale of these units or any one of them we guarantee to pay the above amounts to the Nevada Bank of Commerce.

"We will guarantee that the monies from the 2U Caterpillar and $15,000.00 on the Terra Cobras will be paid within 90 days from above date. The remaining $15,000.00 will be paid with [sic.] 180 days from the above date.

"With the payment of $14,000.00 for the 2U Caterpiller and $10,000.00 for each of the Terra Cobras we want a clear title to the said equipment.

"Yours very truly,
"WES DURSTON INC.
"/S/Wes R. Durston
"Wes Durston, Pres.

"WD:ts
"Acceptance: Nevada Bank of Commerce
"By ------------------------------------"

Notwithstanding the statements contained in the letter, the verdict of the jury may be sustained upon either one of two theories: (1) that notwithstanding the implications of the letter, no contract of sale ever was reached; or (2) that if such a contract was reached, failure of performance by appellant excused performance by respondent. In our view the record contains evidence which would serve to support either theory.

(1) Durston testified in effect that on first discussing purchase of the property he had stated to appellant that construction of an airfield near Los Angeles was commencing; that the contractors needed equipment and that if delivery could be made promptly this would be a good time to move the equipment; that before any agreement as to price could be reached it would be necessary to secure bank consent to delivery and that delivery be made to Los Angeles and the equipment checked. He further testified that the price stated in the letter of May 2 was fixed in order to assist appellant in securing a bank release.

(2) Appellant clearly understood that respondent's interest in the equipment was for purposes of resale; that delivery of the equipment to Los Angeles was therefore essential; that bank consent to such delivery in writing was required by the terms of his mortgage. In a letter to respondent dated March 25, 1949, the bank advised relative to the mortgaged equipment and the balances due: "We want to be understood that all of these should be paid for direct to the Nevada Bank of Commerce before they are moved from the State of Nevada."

(3) Respondent contends that its letter of May 2 constituted a mere offer. The letter was never delivered to the bank by respondent. By including in that letter space for bank acceptance of the proposition as stated, it apparently attached some importance to such acceptance. The proposition was never accepted by the bank.

(4) The letter of May 2 was drawn and signed by

respondent in Los Angeles in the presence of appellant. Appellant was given a signed copy. At the same time appellant executed a written authorization to respondent to apply on appellant's mortgage any money due him. Within a day or so, a representative of respondent called at the bank, discussed the transaction, showed the bank the letter of May 2 but did not deliver it to the bank. A few days later, learning that respondent had not yet delivered the original, appellant delivered his copy to the bank. The Cram authorization was mailed to the bank by respondent, but was accompanied by another letter under date of May 12, 1949, which contained this statement: "* * * in reference to the Terra Cobras of Mr. Crams, Wes has asked me to state that these units were priced two months ago, when the Los Angeles Airport job was just starting. Mr. Crams could not get the release on them, and as time passes this equipment has dropped considerable in price. Last week Mr. Durston was OFFERED some Cobras that were practically new for less than $10,000.00, therefore, that makes Roy Crams units way out of price, as they are not in good shape. But in order to help Mr. Crams we will still attempt to sell them for whatever can be gotten—and if the purchaser wants them guaranteed, as this is the way we sell most of our equipment, we will fix and rebuild them and sent the NET PROCEEDS on up to you. In other words Wes does not want to go in the hole on the straight expense of parts and labor. Therefore, I will enclose the agreement signed by Mr. Crams on May 2nd, 1949, but do NOT use it as a basis for future computations, as it is impossible to get a full $10,000.00 at present for the Cobra's. And we break even on the 2U cat, at this price."

(5) Delivery of the equipment to Los Angeles was made on or about June 12, 1949: (one month after the letter of May 12 offering to sell for "whatever can be gotten"). The bank never gave written consent to delivery. While appellant contends that the bank

authorized such delivery by telephone, the record casts doubt on such contention. The day following delivery the bank by telephone instructed respondent to hold the equipment for the bank. As to his intention, the bank manager testified: "By the Court: What did you mean when you told Mr. Durston to hold the property for your account, did you mean hold the property or hold the proceeds [of sale of the property]? A. Hold the property."

In our view, when the letter of May 2 is considered in the light of the evidence specified, it cannot be said conclusively to demonstrate the existence of a contract. By its very words it contemplates resale of the equipment by respondent before payment of the sums due. It clearly, although tacitly, contemplates action by the bank releasing the equipment for sale by respondent. Under the circumstances it cannot be said that the verdict of the jury was without substantial support or was clearly wrong.

The verdict and judgment accordingly are sustained upon the first assignment of error.

Appellant's second assignment of error is that the trial court erred in refusing to instruct the jury as follows: "The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him, and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

The instruction was taken verbatim from the Uniform Sales Act, being section 6782, N.C.L.1929. It can hardly be denied that, so far as it goes, it is a correct statement of the law. In our view, however, the giving of the instruction would have proved confusing and misleading

to the jury and was properly refused. In Gray v. Chicago, R. I. & P. Ry. Co., 160 Iowa 1, 139 N.W. 934, 937, it is stated: "The trial court is not bound to submit every requested instruction which may be unobjectionable as an abstract legal proposition. This is especially true where the court has sufficiently covered the point in its own charge, or where the giving of it may tend to mislead or confuse rather than enlighten the jury."

The section from which the instruction is taken is one from that portion of the act dealing with performance of a contract of sale. Not only does it contain, without benefit of definition or explanation, many words and phrases of peculiar legal significance (see: Mirodias v. S. P. Co., 38 Nev. 119; 145 P. 912), but standing alone and removed from the enlightening context of the remaining sections of this portion of the act, it cannot be said to constitute a full and clear statement of the applicable law. This is demonstrated by the fact that the section immediately following provides that "acceptance of the goods" shall not in itself wipe out any breach of warranty.

The trial court is sustained upon this assignment of error.

Appellant's last assignment of error relates to the matter of costs. Written judgment was filed in this matter the afternoon on which the verdict was rendered and included judgment for $347.10 costs. A memorandum of costs was filed simultaneously with the judgment. Appellant contends that obviously costs had not been settled and the judgment was premature in its allowance. The record shows, however, that a motion to retax costs was subsequently made and an order entered granting the motion in part. It is clear that if the court erred its error was corrected and cannot now be held other than harmless.

The judgment and order denying motion for new trial are affirmed with costs.

BADT, C. J., and EATHER, J., concur.

ORDER DENYING PETITION FOR REHEARING

December 13, 1951.

*Per Curiam:*

**Rehearing denied.**