HENRY KROEGER AND KATHRYN KROEGER, APPELLANTS, v. ALLAN KING AND MICHAEL KING, RESPONDENTS.

No. 16956

December 10, 1987                               746 P.2d 630

*Milos Terzich,* Gardnerville, for Appellants.

*Feldman, Shaw & DeVore* and *Catherine L. DiCamillo,* Zephyr Cove, for Respondents.

**OPINION**

*Per Curiam:*

Appellants Henry and Kathryn Kroeger were the developers of Tahoe Village #2. Respondents Allan and Michael King pur-- chased a townhouse on Lot 16. The structure, which was completed after title passed, contained numerous defects. Respondents brought suit against appellants, the real estate agent and the general contractor. Appellants stipulated to entry of judgment against them in an amount not to exceed $11,000.00, provided certain conditions were met. The district court granted respondents' motion for entry of judgment in the full amount. Appellants contend respondents were not entitled to entry of judgment. In the alternative, they argue they were entitled to a reduction in the amount of the judgment.

By the terms of the stipulation, respondents were to use due diligence and all legal remedies to collect on judgments obtained against the co-defendants by April 1, 1985. Any sum collected would reduce the amount of the judgment against appellants. Appellants contend respondents were not entitled to entry of judgment because they did not act with due diligence. We disagree.

Diligence is defined as a steady application to business of any

kind, constant effort to accomplish any undertaking. The law does not require any unusual or extraordinary efforts, but only that which is usual, ordinary and reasonable. Ophir Mining Co. v. Carpenter, 4 Nev. 534 (1869). There is ample support for the court's finding of due diligence. Respondents obtained judgments against realtor Jerry Alley and contractor Bert MacMurray. They had judgment entered against Alley in California and recorded abstracts of judgment in two counties. They obtained a real asset search and obtained a lot book guarantee on one parcel thought to belong to him. After obtaining a verbal appraisal on the property, respondents concluded Alley had no equity subject to execution. They hired a private investigator who searched vehicle registration records and made a visual search for personal property at the site of Alley's residence and former office. Finally, respondents scheduled a debtor's examination, but were unable to serve Alley. It was discovered that his company had declared bankruptcy. Respondents located MacMurray in Hawaii. They hired local counsel to pursue the matter. An exemplified foreign judgment was filed and recorded with the Bureau of Conveyances to create a lien on any real property. Garnishee summons were served on ten major Hawaiian banks. A debtor's examination on April 23, 1985 revealed MacMurray was retired, living on social security, and without substantial assets. Respondents spent $2,543.38 on these efforts.

The trial court's findings will not be disturbed if supported by substantial evidence. Consolazio v. Summerfield, 54 Nev. 176, 179, 10 P.2d 629, 630 (1932). A rarely found exception exists where it is clear the court reached a wrong conclusion. Id. Despite all the evidence supporting the trial court's determination, appellants argue a wrong conclusion was reached because respondents' failure to take certain steps precluded a finding of due diligence. In view of all respondents' efforts, we disagree that any of the alleged shortcomings in their collection strategy required the trial court to find due diligence was not exercised as a matter of law.

Appellants question why respondents did not execute on the two parcels of property revealed in the real asset search. Respondents concluded there was no equity subject to execution in one. The other was listed on a computer print-out of information a year and a half old. Although respondents did not document their subsequent discovery that the property had been sold, there was also no evidence the Alleys still owned property. Appellants challenge respondents' failure to levy on property seen near Alley's residence and business. One truck was only leased to Alley. Another, registered in the name of Thunderbird Helicopters, was valued at no more than $200.00. In a field near the business' former offices, respondents' investigator spied a

rotorless helicopter and three old white trucks that appeared to have been parked there for some time. In view of the condition of the equipment, the trial court could conclude due diligence did not require respondents to incur further expenses pursuing this property of unascertained ownership. Appellants argue respondents should have scheduled a debtor's examination of Alley sooner. Respondents explained debtor's examinations are not the preferred method of discovering assets because they alert the debtor. Appellants contend respondents were required to complete a debtor's examination of MacMurray by April 1, 1985. We do not read the requirement that respondents use all legal remedies by April 1, 1985 as separate from the requirement of due diligence. Considering the amount of the judgment against Mac-Murray, the expenses involved in pursuing the matter in Hawaii, and respondents' simultaneous efforts to collect on the judgment against Alley, we cannot say that failure to schedule a debtor's examination by April 1st constituted lack of due diligence as a matter of law. For the same reason, respondents failure to search for assets in Nevada did not render the trial court's conclusion erroneous. None of the facts brought to our attention precluded a finding of due diligence. There was no clear error in the trial court's decision to allow entry of judgment.

Appellants further contend the trial court erred in entering judgment for the amount of $11,000.00. Paragraph 3C of the stipulation provided for a reduction in the judgment if respondents obtained a "judgment against the other defendants" for less than $11,000.00. Alley stipulated to entry of judgment for $20,000.00, to be partially reduced by any sum collected from MacMurray. The case went to trial against MacMurray. The court rendered judgment for respondents in the amount of $8,159.81, plus costs and interest. The trial court found appellants were only entitled to a reduction in the judgment if the collective amount of the judgments against the co-defendants was less than $11,000.00. Appellants argue they were entitled to a reduction if judgment were rendered against any co-defendant for less than $11,000.00.

In interpreting a contract, a court should ascertain the intention of the parties from the language employed as applied to the subject matter in light of the surrounding circumstances. Mohr Park Manor, Inc. v. Mohr, 83 Nev. 107, 112, 424 P.2d 101, 105 (1967). Reading the stipulation as a whole, we are convinced that appellants' interpretation is correct. It was clearly the intent of the parties to limit appellants' liability to respondents' out-of-pocket losses. Paragraph 3A proportionately reduces the judgment "if plaintiff's proof of out-of-pocket expenses relating to

building deficiencies to the Court" is less than $11,000.00. The judgment against MacMurray reflects the amount of damages respondents were able to prove at trial, and hence, the limit of appellants' liability under Paragraph 3A. Consistently, Paragraph C must mean appellants were entitled to a reduction in the judgment if judgment were entered against any one co-defendant for less than $11,000.00. In light of the expressed intent of the parties, it makes no sense to hold appellants liable for the full $11,000.00 because Alley, against whom respondents had also asserted a fraud claim and sought punitive damages of $1,000,000.00, stipulated to entry of judgment for $20,000.00. Appellants were, therefore, entitled to have judgment entered against them for $8,159.81, the amount of the judgment against co-defendant MacMurray.

Accordingly, we reverse the judgment of the district court and remand the cause for entry of judgment consistent with this opinion.